# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 7

OCTOBER TERM, A.D. 2015

*January 20, 2016*

STEVEN W. VAUGHT,

**Appellant**
**(Defendant),**

v.

S-15-0130

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*

Office of the Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Caitlyn F. Young, Assistant Attorney General; Darrell D. Jackson, Faculty Director, Bradford H. Coates, Student Director, and Jonathon M. Lebsack, Student Intern, of the Prosecution Assistance Program.  Argument by Mr. Lebsack.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    Steven Vaught appeals convictions for two counts of first-degree sexual assault under Wyo. Stat. Ann. § 6-2-302(a)(ii) and one count of kidnapping under Wyo. Stat. Ann. § 6-2-201(a)(iii), (d).[1]   We affirm.

## ISSUES

[¶2]    Vaught raises two issues relating to jury instructions, which we condense as follows:

> I.    Did the district court commit plain error by failing to instruct the jury that confinement would not support a kidnapping conviction unless it was separate from and not merely an incident of the sexual assaults?[2]
>
> II.    Did the district court's reply to a question from the jury that the jurors should reread the instructions already given amount to plain error?

## FACTS

[¶3]    Vaught and his wife-to-be started dating in early April of 2013, began living together approximately a month later, and married on September 13, 2013.  The events leading to Vaught's prosecution and conviction took place on January 15, 2014.  Prior to that morning, he had never been violent with his spouse.  However, earlier that month he became severely depressed, and despite taking the medication prescribed for his condition, he found himself frequently contemplating suicide.

[¶4]    At approximately 4:00 a.m. on January 15, Vaught's wife arose because he had been crowding her out of bed, and then went to the kitchen.  While she was leaning on a counter top and looking out the window in the dark, the kitchen lights came on, and Vaught, who is six feet four inches tall and weighs three hundred pounds, rushed up to her, forced duct tape over her mouth, knocked her legs out from under her, rolled her to the floor, and pressed his forearm on her neck until she had to struggle to breathe.  With an angry look, he told her not to scream and that "you've made me do this.  You've

---

[1] One sexual assault charge pertained to oral sex, the second to intercourse.  In both instances, he allegedly overcame his wife by threat of death, serious bodily injury, extreme physical pain, or kidnapping.  He allegedly committed the acts constituting a kidnapping by confining his victim with the intent to inflict bodily injury on her or terrorize her.

[2] Both parties to this appeal refer to the proposition that would form the substance of the desired instruction as the "incidental rule."  For the sake of convenience only, and without intending to lend credence to the alleged existence or scope of such a rule, we will likewise employ that term.

1

forced me into this." He then informed her that he was going to tie her to the bed, kill her, and then kill himself.

[¶5] Vaught then pulled his wife from the floor, removed the duct tape, and ushered her to the bedroom, where at his instruction she removed her pajamas and got into bed. Vaught joined her and the two talked for nearly an hour. Believing that he intended to kill her, she apologized for offending and belittling him during an argument they had the evening before, and also told him that she was wrong and that he had every right to be mad. She promised that if he let her go, she would never tell anyone about what had taken place earlier in the kitchen.

[¶6] She tried to get him to change his lethal plan by telling him she loved him and would do anything to prove it. She ultimately performed oral sex and engaged in intercourse due to his threat to kill her. Afterward she asked him if he felt better about their relationship. Vaught said he did not believe her, evidently referring to her statements that she loved him and would not report the incident. He then lifted the pillows on the bed to show the boot laces he had secured to both sides of the bed for the purpose of lashing her to it.

[¶7] A few moments later, she asked him to "let [her] make [him] one last meal." When he assented, she went to the kitchen, turned on the stove, and cracked three eggs into a skillet. She then asked if he wanted toast, which Vaught declined. With the eggs frying and out of sight of the bedroom where Vaught remained, she secured a small blanket and some slip-on shoes from near a couch. Thus attired, she slipped out the front door and sought help from her neighbors, who provided her sanctuary and called the Gillette Police Department.

[¶8] Vaught heard the front door close and assumed the police would soon be looking for him. Consequently, he dressed and locked and barricaded the front door with a chair wedged under the knob before leaving the second-floor apartment through a bedroom window and driving away. He was arrested later that day.

[¶9] Vaught claims that the acts alleged to constitute a kidnapping were merely incidental to the sexual assaults described above, and could not constitute a separate crime. However, this claimed "incidental rule" played no part in his trial. No one ever alluded to it, Vaught offered no instruction that even remotely reflected the rule of which he now claims the jury should have been informed, and such a rule was never mentioned in a motion for judgment of acquittal or for a new trial.

[¶10] His second issue relates to a question posed by the jury during its deliberations. The jury indicated, "We need clarification on count 3 and lesser charges; the courts' [sic] interpretation/definitions of #s 15, 22, 23." Count 3 was the kidnapping charge, and Instruction Nos. 15, 22, and 23 were the elements instructions for, respectively,

2

kidnapping and the lesser-included offenses of false imprisonment and felonious restraint.[3]

[¶11] The district court asked the prosecutor and defense counsel how it should respond to the question. The prosecutor noted "they've been instructed and I think that they need to read the packet and be encouraged to read the package." Defense counsel then said, "I agree, Your Honor. Read the instructions and then instructions have been provided and whatever standard language the court uses for this kind of inquiry." The judge confirmed that counsel wanted him to instruct "the jury to review again all of the instructions that were previously provided to the jury by the court," which he then did. No one challenged the instruction as being contrary to what the court was asked to do after it was given.

[¶12] Vaught was convicted on all three charged counts. The district court sentenced him to twenty to forty years imprisonment on each of the sexual assault convictions, and to fifty-five to sixty-two years for the kidnapping conviction, with all sentences to run concurrently. Vaught timely perfected his appeal.

## DISCUSSION

**The "Incidental Rule"**

[¶13] Vaught contends that the district court erred in failing to instruct the jury on what he calls the "incidental rule." He concedes that because he never offered such an instruction or otherwise brought the alleged rule to the court's attention, he can obtain a reversal of his conviction only if he can show that the court's failure to give that instruction amounted to plain error.

[¶14] To prevail, he must establish by reference to the record that a clear and obvious violation of a clear and unequivocal rule of law adversely affected a substantial right to such a degree that he was materially prejudiced. To show material prejudice, Vaught must demonstrate a reasonable possibility that the jury verdict would have been more favorable in the absence of the error. *Kovach v. State*, 2013 WY 46, ¶ 79, 299 P.3d 97, 122 (Wyo. 2013). To establish that failure to give the instruction violated a clear rule of law, he must provide authority showing that, at the time of his trial, Wyoming law had a clear-cut requirement that juries be given the instruction he now champions.[4] *Causey v. State*, 2009 WY 111, ¶¶ 20-21, 215 P.3d 287, 293-94 (Wyo. 2009).

---

[3] Those offenses were listed in their more usual and sensible order—descending from the most to the least serious—in the verdict form.

[4] Vaught framed his first issue on appeal in terms of a failure to give what is claimed to be a required instruction on the "incidental rule," but the arguments of both parties appear to be directed more to the question of whether the substantive "incidental rule" has been clearly and unambiguously adopted in Wyoming. Although the two questions are without a doubt related, adoption of the substantive rule would not necessarily require the jury to receive an instruction on it, as if it were an element of the

[¶15]   Kidnapping is an offense which has evolved considerably over time, and in order to understand Wyoming's present kidnapping statute, it is helpful to briefly digress and review its history.  At common law the crime was a misdemeanor, the elements of which were unlawfully confining and transporting another out of the country.  Over time the scope of the crime was gradually broadened far beyond its common-law roots.  One reason was likely a lack of development of the law of attempt and the desire to use the offense to punish conduct that was preparatory to the commission of robbery, rape, or some other crime.  *Model Penal Code* § 212.1 cmt. 1 (Am. Law Inst. 1980).

[¶16]   In approximately the first third of the last century, there was an increase in the number of kidnappings associated with the growing use of automobiles.  There were also several high-profile abductions for ransom.  These events motivated lawmakers to increase the severity of the punishment for kidnapping, often drastically.  *Id.*

[¶17]   The wide variety of legislative responses to those concerns and the equally wide variety of judicial efforts to reconcile and apply that legislation resulted in a lack of consistency between jurisdictions.  Compounding that diversity was the fact that the grading of some kidnapping-like offenses into the lesser crimes of felonious restraint and false imprisonment was not uniform.  Commentators observed that identical conduct often would subject defendants to wildly disparate punishments in different jurisdictions.  Moreover, instances of asportation or confinement of a victim during the commission of another crime could result in punishment much more grave than that for the other crime, even though the movement or detention involved was relatively trivial or had no criminological significance apart from its role in the commission of the other crime.  *Id.*; *see also* cmt. 2.

[¶18]   Legislative and judicial efforts to eliminate the most egregious of those anomalies have been based on a relatively vague notion that if a kidnapping statute is to apply to confinement or movement of a victim that is in any way associated with the commission of another crime, the confinement or movement must in some sense be so substantial that it cannot be deemed a mere incident of the other crime.  2 Charles E. Torcia, *Wharton's Criminal Law* § 207 (15th ed. database updated September 2015); Frank J. Wozniak, Annotation, *Seizure or detention for purpose of committing rape, robbery, or other offense as constituting separate crime of kidnapping*, 39 A.L.R.5[th] 283 § 2[a] (1996).

[¶19]   However, that notion has by no means led to a cure for the problems described above.  Several jurisdictions that purport to follow it nevertheless recognize exceptions when the underlying crime is an escape, murder, or extortion, or when the victim is taken as a hostage or for purposes of inflicting great bodily harm or terror.  Wozniak, *supra*, §

---

offense of kidnapping.  This might be a question of law for the court on an appropriate challenge to the sufficiency of the evidence.

2[a] n.4. Furthermore, courts in the jurisdictions purporting to follow that approach frequently reach disparate and even contradictory results in factually similar cases. For the most part, those differences can be attributed to widely varying views as to the breadth and meaning of the terms "substantial" and "significant" on the one hand, and the terms "incidental" and "inherent" on the other. 2 Torcia, *supra*, § 207; *see also* 3 Wayne R. Lafave, *Substantive Criminal Law* § 18.1(b), (c) (2d ed. database updated October 2015).

[¶20] Often courts define the substantiality or significance of confinement or movement by the extent to which it increases the risk of harm to the victim over and above that which is necessarily present in the underlying crime. Other definitions look to whether the confinement or movement is somehow different in kind from the sort that is inherent in the nature of the other crime, whether it makes that crime substantially easier to commit, or whether it substantially lessens the risk of detection. Most commonly, substantiality is viewed as a function of the duration of confinement or the distance the victim is moved. Thus a prolonged confinement, even within the same premises that were the site of the underlying crime, or movement from one premises to another will generally not be viewed as incidental to the underlying crime. Wozniak, *supra*, § 2[a]. None of those tests, however, account for decisions that hold it merely incidental to a sexual assault to grab and drag a victim into a nearby alley to complete the assault, or that hold it merely incidental to a robbery to lock a homeowner in a closet while searching for valuables to steal. *See* 2 Torcia, *supra*, § 207.

[¶21] These anomalies provided motivation and guidance to the drafters of the Model Penal Code's section on kidnapping, as we briefly observed in *Keene v. State*, 812 P.2d 147, 150-51 (Wyo. 1991). The solution[5] they proposed has been aptly summarized as follows:

> The Model Code response to these concerns is to retain kidnapping as an aggravated felony but to restrict its scope to cases of substantial removal or confinement for certain specified purposes. The rationale is twofold: first, to punish conduct that effects substantial isolation of the victim from the protection of the law; but, second, to confine the offense to instances where the degree of removal or the duration of confinement coupled with the purpose of the kidnapper render the conduct especially terrifying and dangerous. Less

---

[5]In our view, there is a significant distinction between a principle that guides the creation of a law, and a rule of law by which such principles are implemented. In *Keene*, we recognized a concern which motivated the drafters of the Model Penal Code. Here we speak to the resolution to that concern; that is, to the rule embodied in the text of the Model Penal Code proposed statute and the statute actually adopted in Wyoming.

serious forms of unlawful restraint are punished as felonious restraint or false imprisonment[.]

*Model Penal Code, supra,* § 212.1 cmt. 3. Stated another way, under the Model Penal Code's formula, unlawful movement or confinement that occurs in comparatively close temporal proximity to another crime is not merely "incidental" to that crime if done with statutorily specified purposes or intent, and the distance of the move or the time of the confinement is deemed to be (presumably by appellate courts on a case-by-case basis) "substantial" as a matter of law.

[¶22] However, many jurisdictions, including Wyoming, did not adopt the Model Penal Code's recommended language in its entirety. Section 212.1 of the Model Penal Code reads as follows:

> A person is guilty of kidnapping **if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation**, with any of the following purposes:
>
> (a) to hold for ransom or reward, or as a shield or hostage; or
>
> (b) to facilitate commission of any felony or flight thereafter; or
>
> (c) to inflict bodily injury on or to terrorize the victim or another; or
>
> (d) to interfere with the performance of any governmental or political function.
>
> Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree. A removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat or deception, or, the case of a person who is under the age of 14 or incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare.

(Emphasis added.)

[¶23] On the other hand, Wyo. Stat. Ann. § 6-2-201 (LexisNexis 2015) provides:

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:

(i) Hold for ransom or reward, or as a shield or hostage;

(ii) Facilitate the commission of a felony; or

(iii) Inflict bodily injury on or to terrorize the victim or another.

(b) A removal or confinement is unlawful if it is accomplished:

(i) By force, threat or deception; or

(ii) Without the consent of a parent, guardian or other person responsible for the general supervision of an individual who is under the age of fourteen (14) or who is adjudicated incompetent.

(c) If the defendant voluntarily releases the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not more than twenty (20) years.

(d) If the defendant does not voluntarily release the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not less than twenty (20) years or for life except as provided in W.S. 6-2-101.

[¶24] As the quoted language indicates, the Model Penal Code provides that unlawful movements or confinements constitute a separate crime of kidnapping not merely "incidental" to some other approximately contemporaneous crime if done with statutorily specified purposes or intent, and if the distance of the move or the time of the confinement is substantial. A victim must be taken a substantial distance from any place

other than his home or business. The Wyoming legislature removed the "substantial distance" requirement when it adopted our kidnapping statute.

[¶25] Similarly, unlawful confinement constitutes the separate crime of kidnapping under the Model Penal Code only if the confinement lasts for a substantial period of time and is in a place of isolation. The Wyoming legislature chose not to so limit the confinement that constitutes a crime independent of another roughly contemporaneous offense.

[¶26] Thus, to the extent the kidnapping provisions of the Model Penal Code may embody an "incidental rule" as broad, vague, and general as that advanced by Vaught, key aspects of that rule did not survive in the statute adopted in Wyoming. This Court is not at liberty to ignore or alter that legislative decision. *See State v. Walch*, 213 P.3d 1201, 1206-12 (Or. 2009) (en banc) (where legislature declines to include the Model Penal Code's "substantial distance" requirement in its kidnapping statute, and instead limits the reach of that statute only by reference to the intent which must accompany an unlawful asportation, court will not read the Model Penal Code requirement into the statute); *State v. Morris*, 160 N.W.2d 715, 717-18 (Minn. 1968) (same approach in confinement cases); *see also Burton v. State*, 426 A.2d 829, 834-35 (Del. 1981) (if the statute is unambiguous, courts cannot and should not limit when a kidnapping conviction is permissible by adding what is in effect a new element in the guise of construction). Consequently, we are unable to find the incidental rule Appellant argues for somewhere in the interstices of Wyo. Stat. Ann. § 6-2-201.

[¶27] Vaught asks us to find that we judicially adopted such a rule in *Keene v. State, supra*. In that case, a gunman robbed a pharmacy in Cheyenne. During the robbery, he ordered two employees working in another area of the business behind the pharmacy counter before loading up drugs and cash and leaving. He was convicted of two counts of kidnapping for that act. Keene argued that the kidnapping convictions could not stand because he did not remove the two employees from the business or the vicinity. We agreed.

[¶28] We engaged in a grammatical analysis of the text of the kidnapping statute and determined that the phrase "or from the vicinity where he was" referred to a catch-all third alternative site, in addition to a victim's residence or business, from which one could be kidnapped. Thus, the phrase did not refer to moving a victim from one place to another within a residence or business, as the State argued. We observed that this result was consistent with the principles which guided the drafting of the Model Penal Code's kidnapping provision. *Keene*, 812 P.2d at 150-51. Given its focus on the specific language of the statute, that observation cannot be said to declare an "incidental rule" in Wyoming.

[¶29] Two years later, in *Doud v. State*, 845 P.2d 402 (Wyo. 1993), we rejected the appellant's invitation to read into § 6-2-201 the Model Penal Code requirement that a confinement had to last for a substantial period of time in order to constitute a kidnapping. We concluded that regardless of what this Court may think of the Model Code's intent and method of distinguishing between kidnapping and restraints that are less significant or strictly necessary to the commission of another crime,[6] it had to honor the legislature's decision not to adopt that requirement. *Id.* at 405-06.[7]

[¶30] Vaught has not carried his burden of showing that authority existing at the time of his trial clearly established an "incidental rule" beyond the elements of the kidnapping statute. Nor has he shown us any authority requiring juries to be instructed on the claimed rule.[8]

[¶31] This is not to suggest that any amount of restraint could constitute kidnapping or one of its lesser included offenses.[9] The state of the law at the time of Vaught's trial required the jury to determine whether specific acts constituted the crime of kidnapping or one of its lesser included offenses. On a proper challenge, the trial court or this Court would have had to determine whether the facts were sufficient to submit to a jury or to

---

[6] Restraints that are necessary to, part and parcel of, inherent in, or merely incidental to another crime would include, for instance, restraining a victim to commit a sexual assault.

[7] *Doud* unfortunately gives the impression that we took a different course in *Darrow v. State*, 824 P.2d 1269 (Wyo. 1992), and read into our kidnapping statute the Model Penal Code requirement that confinement be in a place of isolation. We did not go so far in *Darrow*. In holding that confinement of a victim in her home could constitute a kidnapping, we observed that such was justified because the confinement blocked the victim's access to the protections of society in the form of discovery or rescue. We did refer to that obstruction as isolating the victim from those protections, but we did not say that such confinement must occur in an isolated location. *Id.* at 1270-71.

[8] Vaught made no effort to describe such a rule in anything other than the most general of terms, or to suggest how an instruction on such a rule might or might not be deemed relevant to a particular set of facts and defenses presented at trial. Here, for instance, evidence suggests that the acts of confinement in the kitchen and bedroom were in no way subsidiary to the sexual assault. The evidence viewed in the light most favorable to the State demonstrated that his plan was to keep his wife quiet, tie her to the bed, kill her, and then kill himself. The sexual acts appear to have resulted from desperate efforts to divert him from that purpose. Although submission was achieved by fear generated by his plan or threat, and therefore satisfied the elements of first degree sexual assault, the sexual acts were subsidiary to that plan. In other words, it appears that the sexual assaults were incidental to the kidnapping, not the reverse.

[9] For instance, the Massachusetts Supreme Judicial Court draws a distinction between the "incidental rule" promoted by Vaught and a more narrow rule that disallows kidnapping convictions based solely on the sort of restraint that is strictly necessary to the commission of a sexual assault or robbery. It rejected the former. *Commonwealth v. Rivera*, 490 N.E.2d 1160, 1165-66 (Mass. 1986), *abrogated on other grounds by* 555 N.E.2d 208 (Mass. 1990). Otherwise, that court permits a defendant to be convicted of both kidnapping and another offense arising out of a single course of conduct, so long as each contains an element that the other does not. *Commonwealth v. McCoy*, 926 N.E.2d 1143, 1159 (Mass. 2010). In this latter regard, *also see State v. Simpson*, 347 N.W.2d 920, 924-25 (Wis. Ct. App. 1984).

sustain a conviction, as was done in *Keene*.[10]  Although the law in this area may in the future undergo considerable development, there was no transgression of a clear rule of law in this case.

**The Jury Question**

[¶32]  As already explained, the jury indicated during deliberation that it wanted the district court to clarify or interpret the three elements instructions relating to the kidnapping charge and the lesser-included crimes of false imprisonment and felonious restraint.  As already explained, when the court asked counsel how it should respond to the jury's note, the prosecutor noted "they've been instructed and I think that they need to read the packet and be encouraged to read the package."  Defense counsel then replied, "I agree, Your Honor.  Read the instructions and then instructions have been provided and whatever standard language the court uses for this kind of inquiry."  Consequently, the court instructed the jury "to review again all of the instructions that were previously provided to the jury by the court."

[¶33]  Vaught now claims the district court's response to the note amounts to plain error.  The State asserts that we should not review that response because Vaught invited any error upon which he now relies upon.

[¶34]  The plain error rule is applicable only to acts of omission, deliberate or not, when a party fails to timely assert a right or pose an objection.  Such an omission forfeits reversal based upon the error unless an appellant satisfies our well-established plain error test, which we set out in our discussion of Vaught's first claim of error.  The invited error rule, on the other hand, altogether precludes appellate consideration of errors that a party's affirmative actions induced, invited, or provoked because such intentional conduct constitutes a species of knowing waiver.  *Toth v. State*, 2015 WY 86A, ¶¶ 45-47, 353 P.3d 696, 710-11 (Wyo. 2015) (in response to jury question, defendant's attorney wanted court to simply instruct jurors to review instructions already given);[11] *Ortiz v. State*, 2014 WY 60, ¶ 81, 326 P.3d 883, 899 (Wyo. 2014); Eric J. Magnuson & David F. Herr, *Federal Appeals Jurisdiction and Practice* § 4:4 (2016 ed.); 9C Arthur R. Miller, *Federal Practice and Procedure Civil* § 2558 (3rd ed. database updated April 2015).

[¶35]  The facts of this case illustrate the sometimes fine line between positive acts and omissions.  Vaught's counsel did in fact endorse a plan of action which the district court ultimately implemented.  However, that endorsement took the form of a simple agreement with the prosecutor's view.  It was not an act of such independent intent that

---

[10]  This is the approach adopted in *Rivera*, 490 N.E.2d at 1165 n.5, where the court expressed its preference for deciding these issues only after the return of a verdict.

[11]  There is an exception for an error which is "necessarily prejudicial."  *Toth,* ¶ 47, 353 P.3d at 711 (quoting *Snow v. State*, 2009 WY 117, ¶ 26, 216 P.3d 505, 513-14 (Wyo. 2009)).

we can view it as a complete waiver of the error now alleged on appeal. Consequently, we will apply the plain error standard to that allegation.

[¶36] Vaught has not shown that, under the circumstances, the district court's response to the jury note violated a clear rule of law. We have found that the failure to provide supplemental instructions can amount to prejudicial error where the original instructions are insufficient and confusing, but we have also cautioned courts to avoid giving such instructions where they touch upon factual matters. *Brown v. State*, 2015 WY 4, ¶¶ 40-44, 340 P.3d 1020, 1031-32 (Wyo. 2015).

[¶37] It is difficult to see how the court could have done other than it did. The jury's note identified nothing defective or confusing about the original instructions, and it was so lacking in particulars that one cannot tell whether the jury wanted a clarification of the law or some guidance as to how the facts in evidence might relate to that law. In short, the jury's question was so general that the court could not have answered it, and it would have been inappropriate for it to inquire into the jury's deliberations—and for it to potentially intrude into the jury's fact finding—to narrow it.

[¶38] Likewise, Vaught has failed to demonstrate any reasonable probability that he was convicted of kidnapping because of the district court's response to the jury's note. If the jury was still unable to understand the charges after reviewing the instructions, it could have asked a more specific question. There was no plain error.

## CONCLUSION

[¶39] The district court did not violate a clear and unequivocal rule of law by failing to instruct the jury on Vaught's belatedly proposed "incidental rule," nor did the court's response to the question posed by the jury during deliberations violate such a clear rule of law. The court did not, therefore, commit plain error. Accordingly, we affirm Vaught's conviction.