BOOMGAARDEN, Justice.
[¶1] On March 14, 2017, Appellant Matthew Vernon Hopkins, a psychiatric addiction specialist, huffed from a can of Dust-Off, got behind the wheel of his car, and lost consciousness while driving to his office. He veered into oncoming traffic, hit another vehicle head on, and injured the other driver. The State filed criminal charges and a jury convicted Mr. Hopkins of aggravated assault and battery, driving under the influence of a controlled substance, and unlawful use of a toxic substance. On appeal, Mr. Hopkins challenges his conviction for aggravated assault and battery. Finding no error, we affirm.
ISSUES
[¶2] We restate and reorder the three issues Mr. Hopkins raises on appeal:
I. Does the "knowingly" element of Wyo. Stat. Ann. § 6-2-502(a)(ii) require the State to prove that Mr. Hopkins purposefully hit the victim's vehicle?
II. Does sufficient evidence support Mr. Hopkins' conviction for aggravated assault with a deadly weapon?
III. Was Mr. Hopkins prevented from presenting a complete defense?
FACTS
[¶3] The facts established at trial were largely uncontested. Mr. Hopkins owned a practice in Cody, Wyoming, where he specialized in adolescent and addiction psychiatry. Mr. Hopkins personally suffers from addiction-he is an alcoholic and abuses Adderall and air dusters. His medical license was suspended in 2003 and 2010 due to his addictions.[1] Mr. Hopkins maintained sobriety for periods of time, but relapsed prior to the incident due to severe financial problems. Mr. Hopkins did not seek treatment because he feared he would lose his medical license permanently. Instead, he used air dusters (inhalants) to combat "the shakes" and anxiety associated with alcohol withdrawal. He admitted air dusters made him light-headed, but denied that he had ever passed out from huffing prior to the incident. Mr. Hopkins abused the air dusters even though he read the warning label on the can and, as a psychiatrist, he knew the risks (including brain damage) of using air dusters and the effects of inhalants on the brain.
[¶4] On the morning of the incident, Mr. Hopkins used some "duster" shortly after he woke up. An hour later, he drove his son to school and headed to work. Mr. Hopkins began getting the shakes and stopped at his hotel room (where he lived temporarily) to get another can of Dust-Off. After he retrieved a can, Mr. Hopkins proceeded to *585 drive himself to his office. He "possibly" used the air duster again while driving and passed out. His vehicle veered into oncoming traffic and he hit another vehicle head on.[2] The other driver sustained injuries and required neck surgery. A forensic toxicologist found inhalants in Mr. Hopkins' blood.
[¶5] In closing argument, defense counsel conceded Mr. Hopkins drove under the influence of a controlled substance and unlawfully used a toxic substance, but argued that the State failed to meet its burden on the "knowingly" element of the aggravated assault and battery charge. The jury convicted Mr. Hopkins of all three charges. This timely appeal followed.
DISCUSSION
[¶6] Mr. Hopkins' issues on appeal all stem from his contention that he lacked the requisite mens rea for aggravated assault and battery under Wyo. Stat. Ann. § 6-2-502(a)(ii) (LexisNexis 2017). During trial, Mr. Hopkins asserted that even though subsection (a)(ii) is a general intent crime, it nonetheless requires some purposeful intent and foreseeability. He argued that the State had to prove that he purposefully hit the victim's vehicle-not that he knowingly drove while under the influence of an inhalant. Mr. Hopkins reasoned that he could not have hit the victim's vehicle on purpose because he was passed out when he veered into oncoming traffic and, further, that the incident was not foreseeable because he had never before lost consciousness while using inhalants. The district court disagreed with Mr. Hopkins' position because it was an improper statement of the law. Consequently, the court did not allow Mr. Hopkins to argue his theory to the jury. Mr. Hopkins claims the district court erred in its ruling, which prevented him from providing a complete defense and resulted in a conviction based on insufficient evidence.
I. Does the "knowingly" element of Wyo. Stat. Ann. § 6-2-502(a)(ii) require the State to prove that Mr. Hopkins purposefully hit the victim's vehicle?
[¶7] We review a district court's legal determinations de novo. Mraz v. State , 2016 WY 85, ¶ 29, 378 P.3d 280, 288 (Wyo. 2016) (citation omitted). To the extent Mr. Hopkins raises a statutory interpretation issue, our review is also de novo. Adekale v. State , 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015).
The plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. Where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not look for and impose another meaning. Where legislative intent is discernible a court should give effect to the most likely, most reasonable, interpretation of the statute, given its design and purpose.
Id. (citations and quotation marks omitted).
[¶8] Wyoming's aggravated assault and battery statute clearly states, in relevant part:
(a) A person is guilty of aggravated assault and battery if he:
....
(ii) ... intentionally or knowingly causes bodily injury to another with a deadly weapon[.]
(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.
Wyo. Stat. Ann. § 6-2-502. Mr. Hopkins does not dispute that he caused the victim's bodily injury or that his vehicle was a deadly weapon. His argument focuses on the "knowingly" requirement in subsection (a)(ii).
[¶9] Mr. Hopkins acknowledges that this portion of the aggravated assault and battery statute articulates a general intent *586 crime. As a general intent crime, the only intent which need be proven beyond a reasonable doubt is that the act constituting the offense charged be done voluntarily. Harris v. State , 2006 WY 76, ¶ 26, 137 P.3d 124, 131 (Wyo. 2006) (citation omitted); Carfield v. State , 649 P.2d 865, 869 (Wyo. 1982) (citations omitted). "An act is voluntary if the actor intended to do it (as opposed to an event occurring accidentally or involuntarily)." Barrera v. State , 2017 WY 123, ¶ 31, 403 P.3d 1025, 1031 (Wyo. 2017). "If done voluntarily, 'the inference thereupon arises that the defendant intended that which resulted.' " Harris , ¶ 26, 137 P.3d at 131 (quoting Slaughter v. State , 629 P.2d 481, 483-84 (Wyo.1981) ; see also Tillett v. State , 637 P.2d 261, 264 (Wyo. 1981) (stating defendants are "considered by law to have intended the natural consequences of [their] act[s]"); Streitmatter v. State , 981 P.2d 921, 927 (Wyo. 1999) (citation omitted) ("The crime of aggravated assault [under Wyo. Stat. Ann. § 6-2-502(a)(iii) ] is a general intent crime, and its commission requires only that intent which the jury may infer from the commission of the proscribed act.").
[¶10] Mr. Hopkins argues, without citation to relevant authority or pertinent language in the statute itself, that the "proscribed act" under subsection (a)(ii) is the "intentional or knowing use of force or violence directed at another person." He reasons that because he was unconscious when his vehicle veered into oncoming traffic, he could not have "purposefully used his car as a deadly weapon." Moreover, he asserts that "the natural consequences of [his] actions" were not foreseeable because the inhalants had never before caused him to lose consciousness.
[¶11] Mr. Hopkins misreads Wyo. Stat. Ann. § 6-2-502(a)(ii). There is no language in subsection (a)(ii) whatsoever that requires the State to prove a particular use of force or an act of violence, as Mr. Hopkins suggests. Subsection (a)(ii) simply and unambiguously proscribes causing bodily injury with a deadly weapon.[3] Wyo. Stat. Ann. § 6-2-502(a)(ii). Because Mr. Hopkins does not dispute that he caused bodily injury with a deadly weapon, the pertinent question is whether Mr. Hopkins voluntarily did so even though he was unconscious. See, e.g. , Saldana v. State , 685 P.2d 20, 22 (Wyo. 1984) ("To violate the statute, it is necessary only that the proscribed conduct be undertaken voluntarily."); Harris , ¶ 26, 137 P.3d at 131 ("For general intent crimes, all that is necessary is that the act be done voluntarily."). In this case, the answer is yes.
[¶12] "Although a voluntary act is an absolute requirement for criminal liability, [not] every act up to the moment that the harm is caused must be voluntary." 1 Wayne R. LaFave, Subst. Crim. L. § 6.1(c) at 578-79 (3d ed. 2018) (footnote omitted). And, while the voluntary act must "concur" with the mental fault, "[t]he emphasis is upon results caused by the defendant, and any act or omission (with the prescribed state of mind) which causes that result will do." Id. § 6.3(c) at 617. A person, therefore, may be guilty of criminal homicide or battery even though he is unconscious or asleep at the time of the fatal or injurious impact. Id. at 618. For example, if A drives when he is extremely sleepy and hits another vehicle killing (or seriously injuring) a passenger, the act-which causes the death-is continuing to drive while knowing he is sleepy, which coincides with the required mental state. Id.
[¶13] Applying this reasoning, we have little trouble concluding that Mr. Hopkins knowingly caused bodily injury with a deadly weapon even though he was unconscious when he hit the victim's vehicle. Mr. Hopkins did not suffer an accidental loss of consciousness, as he had full knowledge of the effects inhalants have on the brain. Mr. Hopkins garnered this knowledge from his professional *587 psychiatry work specializing in addictions, his personal use of inhalants, and his reading the warning label on the air duster can. It was foreseeable that he could lose consciousness and lose control of his vehicle. Despite such knowledge, Mr. Hopkins chose to huff and drive himself to work while under the influence of an inhalant. He admitted that he possibly inhaled more along the way and a witness observed the air duster can in his lap as he was driving. Mr. Hopkins then lost consciousness, hit another vehicle, and injured the other driver. This voluntary and knowing conduct concurs with the general intent required by Wyo. Stat. Ann. § 6-2-502 (a)(ii) -it is conduct that produced the proscribed result. See, e.g. , Streitmatter , 981 P.2d at 927. The district court, therefore, did not err when it determined that Mr. Hopkins' defense theory was an improper statement of the law.
II. Does sufficient evidence support Mr. Hopkins' conviction for aggravated assault with a deadly weapon?
[¶14] When we review a criminal conviction for sufficiency of the evidence, we view the facts in the light most favorable to the State. Downs v. State , 581 P.2d 610, 614 (Wyo. 1978). We leave out any conflicting evidence of the defendant, and draw every reasonable inference in the State's favor. Id . The question we must answer is whether a reasonable and rational jury could have convicted the defendant of the crime based upon the evidence that was presented at trial. Horn v. State , 554 P.2d 1141, 1145 (Wyo. 1976).
Guy v. State , 2008 WY 56, ¶ 37, 184 P.3d 687, 698 (Wyo. 2008).
[¶15] Mr. Hopkins asserts his conviction for aggravated assault and battery is not supported by sufficient evidence because no evidence supports an intentional or knowing mens rea. He argues that although he drove while under the influence of a toxic substance, the State failed to show "additional driving conduct" to support an "intentional and knowing action towards another individual." This claim has merit only if we adopt Mr. Hopkins' interpretation of the mens rea requirement under subsection (a)(ii). We rejected his interpretation for the reasons stated above.
[¶16] Applying the "knowingly" element of Wyo. Stat. Ann. § 6-2-502 (a)(ii) as the legislature plainly drafted it, the jury could reasonably infer the requisite mens rea from the fact Mr. Hopkins caused bodily injury to another with his vehicle under the circumstances evidenced in this case. Mr. Hopkins testified that he knew the effects inhalants have on the brain but inhaled the air duster anyway because he had the shakes; he drove his son to school after huffing; he stopped to get more air duster from his hotel room after dropping his son off at school; he got back in his car to drive to work and possibly inhaled more air duster as he was driving; and he struck another car causing injury to its driver. This testimony alone was sufficient to prove Mr. Hopkins knowingly violated Wyo. Stat. Ann. § 6-2-502(a)(ii).
III. Was Mr. Hopkins prevented from presenting a complete defense?
[¶17] Applying the same reasoning he argued in issues I and II, Mr. Hopkins contends that he should have been allowed to argue to the jury that his conduct better matched the mens rea required for related crimes, such as aggravated assault and battery under subsection (a)(i) (causing "serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life") or driving under the influence and causing serious bodily injury under Wyo. Stat. Ann. § 31-5-233(h) (LexisNexis 2017). In other words, Mr. Hopkins wanted to present an "alternative charges" theory to argue that subsection (a)(ii) must require proof he "purposefully used his car as a deadly weapon" if aggravated assault and battery under subsection (a)(ii) is to be distinguished from those other crimes. He asserts that the district court's interpretation of "knowingly" in subsection (a)(ii) prevented him from presenting a complete defense and, thus, violated his due process rights. Mr. Hopkins frames his due process claim in terms of how the jury was ultimately instructed-arguing that the district court violated his due process rights when it (1) failed to instruct the *588 jury on the defense's theory of the case, and (2) instructed the jury on the "knowingly" element by giving the pattern general criminal intent instruction over his objection and refusing to give his proposed instruction defining "knowingly" as "purposefully."
A. Defense Theory Instruction
[¶18] "The failure to give an offered instruction on the law related to a theory of defense is a due process issue, which this Court reviews de novo. " Tingey v. State , 2017 WY 5, ¶ 27, 387 P.3d 1170, 1178 (Wyo. 2017) (citing James v. State , 2015 WY 83, ¶ 17, 357 P.3d 101, 105 (Wyo. 2015) ). However, the failure to give an instruction that is not offered by a defendant is reviewed for plain error. Id. (citing Vaught v. State , 2016 WY 7, ¶ 13, 366 P.3d 512, 515 (Wyo. 2016) ; Schaeffer v. State , 2012 WY 9, ¶ 26, 268 P.3d 1045, 1056 (Wyo. 2012) ).
[¶19] Our review is for plain error because Mr. Hopkins did not submit a theory of defense instruction outlining his position.[4] Tingey , ¶ 27, 387 P.3d at 1178. In order to prevail under the plain error standard, Mr. Hopkins must show the record reflects "that a clear and obvious violation of a clear and unequivocal rule of law adversely affected a substantial right to such a degree that he was materially prejudiced." Id. (citing Vaught , ¶ 14, 366 P.3d at 516 (footnote omitted)). "To establish that failure to give the instruction violated a clear rule of law, he must provide authority showing that ... Wyoming law had a clear-cut requirement that juries be given the instruction he now champions." Tingey , ¶ 27, 387 P.3d at 1178 (quoting Vaught , ¶ 14, 366 P.3d at 516 (footnote omitted)). Material prejudice requires Mr. Hopkins to demonstrate that there is a "reasonable probability that the result would have been more favorable to the defendant had the error not occurred." Larkins v. State , 2018 WY 122, ¶ 94, 429 P.3d 28, 50 (Wyo. 2018).
[¶20] Mr. Hopkins does not identify a clear and unequivocal rule of law the district court violated and we have found none. As discussed above, Mr. Hopkins' defense theory, that the State was required to prove he "purposefully hit the victim's vehicle," is legally flawed and, therefore, was properly excluded from presentation to the jury. See, e.g. , Bush v. State , 2008 WY 108, ¶ 59, 193 P.3d 203, 218 (Wyo. 2008) (citation omitted) (explaining that the United States Constitution "permits judges to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice or confusion of the issues"); Marfil v. State , 2016 WY 12, ¶ 25, 366 P.3d 969, 975 (Wyo. 2016) (citation omitted) (approving the refusal of a proposed jury instruction that misstates the law).
[¶21] Moreover, it is not a theory of defense to request that the jury be instructed on crimes the State has not charged. Harnetty v. State , 2019 WY 21, ¶ 29, 435 P.3d 368, 374 (Wyo. 2019) (citing Bouwkamp v. State , 833 P.2d 486, 490 (Wyo. 1992) ("Suggestion of an alternative charge is not a defense to the crime being prosecuted.")). Mr. Hopkins had no due process right to have the district court instruct the jury on a crime under which he was not charged. See Harnetty , ¶ 30, 435 P.3d at 375. He was not charged with aggravated assault and battery under Wyo. Stat. Ann. § 6-2-502(a)(i) or driving under the influence and causing serious bodily injury under Wyo. Stat. Ann. § 31-5-233(h). Consequently, Mr. Hopkins has failed to demonstrate any plain error impacting his due process rights.
B. "Knowingly" Instruction
[¶22] During deliberations, the jury sent a note to the district court, inquiring as follows:
Need clarification for instruction #11, Point 4. "Knowingly caused" What is the *589 legal definition? How are we as jurors to understand and apply this point?
In response to the jury's question, the district court informed the parties of its intent to provide the Wyoming Criminal Pattern Jury Instruction 6.13, defining general criminal intent. Mr. Hopkins advised the district court that he did not believe further instruction was necessary, but that if the district court was inclined to do so, he proposed that the district court provide an instruction stating "knowingly" means "purposefully." After further discussion, Mr. Hopkins informed the district court of his final position that he objected to any further instruction. He also argued that the pattern instruction would attempt to define a common usage term-"knowingly"-that needs no further definition. The district court provided the general intent instruction over Mr. Hopkins' objection.[5]
[¶23] Mr. Hopkins now asserts that the jury's question "struck at the heart of the issue the defense wanted to raise and the court prevented, which is the 'knowing' element." He claims he was prejudiced by the district court giving the general intent instruction over his objection and the district court's refusal to provide his proposed instruction. We disagree.
[¶24] The district court has "wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." Dennis v. State , 2013 WY 67, ¶ 36, 302 P.3d 890, 897 (Wyo. 2013) (citation omitted). We review the district court's refusal to give a requested instruction for an abuse of discretion. Id. (citation omitted). Prejudice results when the instructions confuse or mislead the jury. Id. (citations omitted).
[¶25] Although Mr. Hopkins objected to the district court providing the pattern instruction defining general criminal intent, he has not demonstrated that the instruction was confusing, misleading, or an inaccurate statement of the law. In fact, at trial, Mr. Hopkins admitted that he saw "nothing wrong" with the pattern instruction "as it outlines the law."
[¶26] Mr. Hopkins' claim that the district court erred when it refused to give his proposed instruction that "knowingly" means "purposefully" likewise is without merit. "A district court is not required to define a statutory term unless the term has a technical or legal meaning different than its common meaning." Marfil , ¶ 25, 366 P.3d at 976 (citations omitted). We previously held that "the term 'knowingly' requires no clarification because the legal meaning of the term is not so separate from its ordinary meaning." Adekale v. State , 2015 WY 30, ¶ 42, 344 P.3d 761, 770 (Wyo. 2015) (citing Morris v. State , 2009 WY 88, ¶ 16, 210 P.3d 1101, 1105 (Wyo. 2009) ); see also Marfil , ¶ 25, 366 P.3d at 975 (citation omitted) (explaining that "where a term used in a criminal statute is not given a statutory definition, we presume the legislature did not mean for the term to have a specialized meaning"). Mr. Hopkins conceded at trial that "knowingly" is a "common usage" term that did not require further definition. Thus, the district court did not abuse its discretion when it rejected Mr. Hopkins' proffered instruction.
CONCLUSION
[¶27] The "knowingly" requirement of Wyo. Stat. Ann. § 6-2-502 (a)(ii) did not require the State to prove that Mr. Hopkins purposefully hit the victim's vehicle. Mr. Hopkins' knowing and voluntary act of continuing to drive while under the influence of an inhalant provided the required mens rea to impose criminal liability for aggravated assault and battery under subsection (a)(ii). The evidence was more than sufficient to support his conviction and the district court *590 properly instructed the jury as to the statutory elements.
[¶28] Affirmed.

Mr. Hopkins voluntarily relinquished his license after the March 14, 2017, incident.

Two witnesses, who were friends of Mr. Hopkins' wife, observed Mr. Hopkins enter his vehicle in an impaired state and carrying an air duster can. Mr. Hopkins almost hit one of the witnesses' vehicle as he backed out. The two witnesses "caravanned" with Mr. Hopkins in an attempt to ensure he safely arrived at his office and observed him driving too fast and erratically before he veered into oncoming traffic. One of the witnesses also observed an air duster can in Mr. Hopkins' lap as he was driving.

In discussing the mens rea issue at trial, the prosecutor, relying on Barrera , suggested that the prohibited act is "huffing while driving." The district court adopted that characterization in its oral ruling. That characterization is not helpful as it confuses conduct related to mens rea (voluntarily driving while intoxicated as discussed below at ¶¶ 11, 12) with the statutorily prohibited act of causing bodily injury with a deadly weapon. It is like saying that the "outlawed act" in a separate case is the drawing of a knife or gun from the waistband of one's pants rather than the act of stabbing someone with a knife or shooting someone with a gun in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii).

Prior to trial, the State submitted its proposed jury instructions, including an instruction on the elements of aggravated assault and battery and that self-induced intoxication is not a defense to the crime of aggravated assault and battery-bodily injury with a deadly weapon. Mr. Hopkins filed a notice with the district court stating he believed the State's proposed jury instructions were proper and appropriate; he did not have any amendments, nor did he offer other instructions.

The district court instructed the jury:
In the crime Aggravated Assault and Battery-Bodily Injury with Deadly Weapon charged there must exist a connection between the act or conduct and general criminal intent.
General criminal intent requires that the charged act is voluntarily taken, but it does not require any intention to violate the law or any intention to do a further act or achieve any further consequence, result, harm or injury from such act. When a person voluntarily does that which the law declares to be a crime, that person is acting with general criminal intent.