# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 83A

### APRIL TERM, A.D. 2015

### July 16, 2015

TERENCE JAMES,

Appellant
(Defendant),

v.

S-14-0234

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Albany County*
The Honorable Jeffrey A. Donnell, Judge

*Representing Appellant:*
>   Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*
>   Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Blake A. Klinkner, Assistant Attorney General. Argument by Mr. Klinkner.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice\*.**

[¶1]   Terence James appeals his conviction for aiding and abetting aggravated robbery, claiming the district court denied him the right to due process when it refused to instruct the jury on his defense of duress.  We conclude Mr. James was denied his right to a fair trial when the district court ruled the duress defense instruction would not be given to the jury after Mr. James testified and admitted the elements of the crime, leaving him with no defense whatsoever.  We reverse and remand for a new trial.

## ISSUE

[¶2]   Mr. James asserts he was denied his right to due process when the district court refused to instruct the jury on his defense of duress.  The State contends the district court properly ruled Mr. James was not entitled to the instruction because he did not present competent evidence establishing a prima facie case of duress.

## FACTS

[¶3]   On January 1, 2013, Mr. James and Kevin Lewis entered the Fairfield Inn in Laramie, Wyoming wearing bandanas over their faces.  Mr. Lewis told the front desk clerk this was a robbery and brandished a gun.  The desk clerk opened the side door to allow Mr. Lewis behind the desk and Mr. Lewis asked him to open the drawer and show him the money.  Mr. Lewis removed the money and asked whether there was a safe.  The desk clerk said there was but he did not have the combination.  Mr. Lewis asked the clerk for his wallet.  Mr. Lewis and Mr. James then left the hotel.

[¶4]  On January 11, 2013, a business was robbed in Cheyenne.  Police stopped a vehicle matching the description of the car used in the robbery.  Mr. Lewis and Mr. James were in the vehicle.  During questioning, Mr. James told police he was not with Mr. Lewis when he committed the Cheyenne robbery earlier that evening.  He said Mr. Lewis had attempted to contact him that day but he had refused to talk to him.  Mr. James admitted his involvement in the Laramie robbery.  He also told police he had been with Mr. Lewis when he committed a robbery in Colorado and attempted a robbery in Casper, Wyoming the week before.  Mr. James was arrested and  charged with accessory before the fact to aggravated robbery, in violation of Wyo. Stat. Ann. § 6-1-201(a) and § 6-2-401(a)(c)(ii) (LexisNexis 2011) for his involvement in the Laramie robbery.

[¶5]  Prior to trial, Mr. James submitted the following jury instruction:

*The opinion published in *James v. State*, 2015 WY 83, published on June 11, 2015, WL 3623601 (Wyo.), is amended by this opinion.  The earlier opinion has no further force or effect.

1

Duress Defense Instruction

> [C]onduct which would otherwise constitute an offense is justified if a reasonable person would believe that he was compelled to engage in the proscribed conduct by the threat or [use] of immediate physical force against his person or the person of another which resulted or could result in serious physical injury which a reasonable person in the situation would not have resisted.

> The State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

[¶6]  In her opening statement, defense counsel told the jury that Mr. James' presence during the motel robbery was compelled by Mr. Lewis' intimidating behavior and threats to harm Mr. James or his family. She told the jury that Mr. Lewis had easy access to Mr. James, his mother and his family because he lived with them. She told the jury that Mr. James did not want to participate in Mr. Lewis' criminal acts but feared that if he refused, Mr. Lewis would harm his family.

[¶7]  During cross-examination of the State's witnesses, defense counsel made it clear that although Mr. James was present during the robbery, Mr. Lewis had the gun, did all the talking and took the money. Defense counsel also made it clear that Mr. James told police Mr. Lewis had threatened him and his mother and he was scared of Mr. Lewis.

[¶8]  On the morning of the second day of trial, the district court held a jury instruction conference outside the presence of the jury. After hearing argument from counsel, the court decided any duress defense instruction given to the jury would state:

> Duress may be a defense to criminal charges. Thus conduct that would otherwise constitute a criminal offense may be justified if a reasonable person would believe that he was compelled to engage in that conduct by the threat or use of immediate physical force against his person or the person of another which results or could result in serious physical injury which a reasonable person in the situation would not have resisted.

> If there was a reasonable legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense must fail.
>
> The duress must be present, imminent or impending, and it must be of such a nature so as to induce a reasonable fear of death or serious bodily harm if the otherwise criminal act is not done.
>
> The defendant carries the burden of proving the defense of duress.

The district court advised counsel:

> Now, I will say this as well: I don't know what the evidence is going to be today, obviously. We're having this whole discussion based on the supposition that the evidence presented will support this instruction. That may or may not be the case.
>
> And under *Campbell*, the Supreme Court requires a very narrow set of facts before this instruction becomes appropriate. A history of being a bad guy doesn't do it.
>
> So we'll see whether or not we'll actually give this instruction at all. That will be based on what the evidence is this morning, okay?

[¶9] After the instruction conference, the defense presented its case. Mr. James was the only witness. He testified that he met Mr. Lewis in November of 2012 when Mr. Lewis, who was dating Mr. James' mother, began living with him and his mother in their home in Cheyenne, Wyoming. One day in December, Mr. James accompanied Mr. Lewis to take his mother to work. Mr. James had left his son with his sister and told her that he would be right back. After they dropped Mr. James' mother off at work, however, rather than returning home, Mr. Lewis drove to a club. Mr. James objected but Mr. Lewis ignored him. Inside the club, Mr. Lewis began arguing with other customers. They left the club, and outside in the parking lot Mr. Lewis pulled a gun and threatened to shoot people. Mr. James testified that Mr. Lewis then drove to a gas station. In the parking lot outside the gas station, Mr. Lewis made derogatory remarks to a female customer. Mr. James testified that the woman's boyfriend told Mr. Lewis to stop disrespecting his girlfriend and Mr. Lewis "got in his face." The woman came over to stop him and Mr. Lewis knocked a coffee cup out of her hand and punched her. Mr. James also testified that his mother and Mr. Lewis had an altercation in December of 2012 in which Mr. Lewis threatened to kill her if she ever left him and said that if Mr. James and his brother

3

found out he had killed her, he would "deal with" them. Mr. James understood this to mean that Mr. Lewis would hurt them in some way. Mr. James testified that because of Mr. Lewis's aggressive and violent behavior, he was afraid of him.

[¶10] Mr. James testified that he and Mr. Lewis went to Chicago just before Christmas, 2012. Mr. Lewis told him he had friends there who were robbers and killers who would come to Mr. Lewis' assistance whenever he needed them. On their way back from Chicago on December 23, 2012, Mr. Lewis stopped at a motel in York, Nebraska. He told Mr. James they were getting a room for the night. They went inside and Mr. Lewis asked the front desk clerk whether the manager was there. She said, no, and, according to Mr. James, Mr. Lewis pulled out a gun and said "this [is] a robbery." Mr. James testified he was terrified. He said Mr. Lewis made the desk clerk lie down on the floor, took her purse, took money from behind the desk, and walked out of the motel. Mr. James testified that back in the car, he told Mr. Lewis he did not want to have anything to do with him and wanted to go home to his son. He testified that Mr. Lewis held the gun to his head and told him he would do whatever Mr. Lewis wanted him to do, or Mr. Lewis would do something to his family.

[¶11] Mr. James testified he was at a party at his mother's house eight days later when Mr. Lewis said he was going out to get more alcohol. Mr. James' mother told him to go with Mr. Lewis. Rather than going to a liquor store, however, Mr. Lewis drove onto the highway and headed in the direction of Laramie, Wyoming. Mr. James asked where they were going and Mr. Lewis said he would let Mr. James know when they got there. They drove to Laramie and stopped at the Fairfield Inn. Mr. Lewis parked the car, pulled bandanas out of the backseat, retrieved a gun from the glove compartment and told Mr. James to follow his lead. Mr. Lewis entered the motel and asked if the manager was there. The desk clerk said, no, and Mr. Lewis pulled out the gun and robbed him and the motel. Mr. James testified that he went into the motel with Mr. Lewis because of Mr. Lewis' threat to hurt his family if he did not do what Mr. Lewis told him to do. Mr. James testified he did not go to the police about Mr. Lewis' behavior because of Mr. Lewis' statement that his friends, whom Mr. Lewis described as "killers," would protect him and Mr. James did not know if they were watching him. He also said he had gone to the police before and they had not helped him.

[¶12] Mr. James testified that after his arrest he remained fearful of Mr. Lewis even though Mr. Lewis was also in custody. He related that during one interview with police, he could hear Mr. Lewis in the next room and was afraid Mr. Lewis was listening to him. He told the officer he did not want to go into detail about what had happened because he thought Mr. Lewis was listening. He testified that he was still afraid of Mr. Lewis at the time of trial even though Mr. Lewis was in jail because he had said that if Mr. James ever told on him, his friends would do something to Mr. James' family.

[¶13] Mr. James did not deny that he was with Mr. Lewis during the robbery. His entire defense was that he was there because, based on Mr. Lewis' violent and intimidating behavior and threats, he feared Mr. Lewis would harm him or his family if he did not cooperate. On cross-examination of Mr. James, the prosecutor established that in order to claim duress as a defense, Mr. James had admitted all of the elements of the crime charged.

[¶14] After Mr. James' testimony, the district court held a final jury instruction conference outside the presence of the jury. The court informed counsel that it had not heard testimony supporting the duress defense instruction. Defense counsel argued that Mr. James' testimony that he was compelled to engage in criminal conduct by the threat of immediate physical force against his person or his family supported the instruction. The district court responded that there was no immediate or imminent threat; rather, there was one threat a week before the robbery. Defense counsel argued that Mr. James had a reasonable and genuine belief that Mr. Lewis had friends who would kill or harm him or his family. The district court responded:

> And what steps did he take, which he had the opportunity to take, in order to avoid committing the crime and in order to avoid the risk of harm? Does he tell anybody about any of this? No. Did he go to the police? No. When they got to Laramie, did he get out of the car and try to walk away? No. Did he do anything at all to try to avoid this so-called threat?

Defense counsel stated that Mr. James believed there was no alternative and did not believe the police would be able to protect his family. He believed if he did not participate either he or his family would be killed or harmed. Defense counsel argued that although in reality there may have been alternatives to cooperating with Mr. Lewis, Mr. James' fear of him and his easy access to Mr. James, his mother and his family, and his fear of Mr. Lewis' friends, reasonably led him to believe he had no alternative. Ruling the evidence did not support a finding that there was a present, imminent or impending threat and Mr. James had reasonable alternatives to violating the law, the district court declined to give the duress defense instruction. Additionally, the court ruled that counsel would not be allowed to argue duress in closing argument.

[¶15] The district court re-convened the jury and read them the instructions. Almost immediately in his closing argument, the prosecutor stated:

> I would like you to notice what's missing from this instruction packet. There is nothing about a duress defense. There is no duress defense in this case. You are not

instructed on it. It doesn't apply to this case. Your duty is to apply the law as you're instructed.

> So there's no duress defense. What does that leave you with? Forget all the evidence I put in before in my case in chief. You've got Terence James' admission on the stand that he participated in the robbery on January 1, 2013, here in Laramie. You've got his admission that he was present during the robbery; that a gun was used, and they robbed that clerk at gunpoint.

The prosecutor concluded his remarks by saying:

> [Mr. James] participated in that robbery. That's what he told you. That's why he should be convicted. Duress is not a defense in this case. . . .

[¶16] After deliberating for almost an hour, the jury submitted the following question to the court: "Does the law allow us to consider duress?" Over defense counsel's continuing objection, the district court answered the question, "No." Eighteen minutes later, the jury returned a verdict finding Mr. James guilty of the crime of accessory before the fact to the crime of aggravated robbery. The district court sentenced Mr. James to serve five to ten years in prison with credit for 362 days served in pre-adjudication confinement. Mr. James timely appealed from the judgment and sentence.

## STANDARD OF REVIEW

[¶17] The failure to give an instruction on the law related to a theory of defense is a due process issue, which this Court reviews *de novo*. *Nelson v. State*, 2010 WY 159, ¶ 13, 245 P.3d 282, 285 (Wyo. 2010).

## DISCUSSION

[¶18] This Court has said:

> Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case. *Blakely v. State*, 474 P.2d 127, 129 (Wyo.1970). The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. *Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo.1992). A theory of the case is more than a comment on the evidence that tells the jury how to consider the evidence. *Ellifritz v. State*, 704 P.2d 1300 (Wyo.1985). Fundamentally,

6

> the instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp*, 833 P.2d at 490.
>
> . . . .
>
> Any competent evidence is sufficient to establish a defense theory even if it consists only of testimony of the defendant. *Best v. State*, 736 P.2d 739, 745 (Wyo.1987). We view the evidence in a light favorable to the accused and the accused's testimony must be taken as entirely true to determine if the evidence is competent. *Duckett v. State*, 966 P.2d 941, 944 (Wyo.1998). Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Id.*

*Nelson*, ¶ 14, 245 P.3d at 285-286, citing *Iseli v. State*, 2007 WY 102, ¶ 10, 160 P.3d 1133, 1136 (Wyo. 2007). Instructions not based on the evidence, however, can be properly refused. *Id.*

[¶19] In Wyoming, duress has been recognized as a defense to criminal charges, other than a charge of taking the life of an innocent person. *Campbell v. State*, 999 P.2d 649, 659 (Wyo. 2000), citing *Amin v. State*, 811 P.2d 255, 260 (Wyo. 1991). Duress must be present, imminent or impending, and of such a nature so as to induce a well-grounded fear of death or serious bodily harm if the otherwise criminal act is not done. *Id.* The defendant has the burden of demonstrating the elements of the defense. *Id.*

[¶20] In *Amin*, 811 P.2d at 256, two prison inmates were convicted of aggravated assault and kidnapping after they forcibly seized two prison employees and held them captive. They claimed prison conditions were such that they were under duress and coerced into acting as they did and had no other recourse. This Court upheld the district court's refusal to give a duress defense instruction because the instruction misstated the law and the defendants presented no evidence they (a) were faced with a specific threat of death or substantial bodily injury in the immediate future; (b) did not have time to complain to the authorities, or any such complaint would have been futile; and (c) had no opportunity to resort to the courts to redress their grievances. *Id.*

[¶21] In *Campbell*, the defendant was charged with child endangerment after she failed to take her three year old daughter to the doctor for treatment of second and third degree burns the child sustained over eighteen percent of her body while left alone with the defendant's boyfriend. *Id.* at 654. When the defendant arrived home and observed the burns, she left the child with a babysitter and went out with her boyfriend to play darts at a bar. *Id.* At trial, the boyfriend testified that he had been physically abusive to the

7

defendant for years, and although she wanted to take the child to the hospital, he believed she went to the bar to avoid angering him. *Id*. at 655. The defendant testified that she had a long history of abuse by her brother, stepfather and her boyfriend and, at the time of her daughter's injuries, she feared for herself and her daughter if she refused to go with her boyfriend. *Id*.

[¶22] Defense counsel requested a jury instruction on the defense of duress and coercion and the district court denied the request, finding no evidence of imminent bodily harm. *Id*. at 659. On appeal, the defendant claimed she should have been allowed to present the defense because the abuse she had suffered caused her to believe she was in imminent danger of harm if she did not leave her daughter and go with her boyfriend. *Id*. at 660. She likened her situation to that of a battered woman raising self defense as an affirmative defense, which is specifically allowed by Wyo. Stat. Ann. § 6-1-203(b). This Court concluded the battered woman statute applies only when a person is charged with a crime involving the use of force against another and asserts she acted in self-defense, and the statute did not apply in the context of a child endangerment charge. *Id*.

[¶23] This Court then considered whether the defendant had established the elements of the common law defense of coercion and duress; that is, whether she presented evidence that she faced present, imminent or impending death or serious bodily injury if she stayed and cared for the child. We said:

> The evidence established that others were present in the house at the time Campbell made her decision and did not witness Campbell's refusing to play darts or witness Boyer's [sic] threatening Campbell if she cared for her child. Campbell made no attempt to seek medical advice, take her daughter to the hospital, dress her in loose clothing, or give her medications either for pain or to prevent infection. Campbell testified that she recognized that the burns were extensive and serious and required medical care, and she decided not to seek medical care because her past abuse caused her to realize that she would provoke Boyer. We agree with the district court that this record does not establish that she faced present, imminent or impending death or serious bodily harm, and the district court did not err in refusing to give her defense instruction.

*Id*.

[¶24] *Amin* and *Campbell* are distinguishable from Mr. James' case. In neither case did the defendants present evidence of an actual direct threat of physical harm before they committed the criminal act. In contrast, Mr. James testified that a week before the

8

Laramie robbery, after he told Mr. Lewis he wanted nothing to do with him, Mr. Lewis held a gun to his head and told Mr. James that he would do what Mr. Lewis wanted him to do or Mr. Lewis would harm his family. Then, after driving to an unknown location in Laramie rather than to the liquor store as he had said, Mr. Lewis retrieved a gun from the glove compartment and told Mr. James to follow his lead. Viewing this evidence in the light most favorable to Mr. James and accepting his testimony as true as we are required to do, we conclude a jury could reasonably have concluded that on the night of the robbery Mr. James faced a present, imminent or impending threat of such a nature as to induce a well-grounded fear of death or serious bodily harm if he did not do what Mr. Lewis said.

[¶25] In concluding otherwise, the district court found there was no threat on the night of the Laramie robbery; rather, the only threat occurred a week earlier. We disagree. Mr. James was unarmed and alone in a different town with a man whom he had seen behave violently, who was armed with a gun and who a week earlier had held the gun to his head and threatened to harm his family if he did not do what he was told. These facts were sufficient to establish a jury question as to Mr. James' duress defense.

[¶26] The district court also found that Mr. James was not entitled to the duress defense instruction because he failed to show that he had no reasonable legal alternative to committing the robbery. In *Campbell*, we did not consider whether the defendant had a reasonable legal alternative to endangering her child because we concluded there was no immediate, imminent or impending threat. In *Amin*, 811 P.2d at 261, the Court concluded that in addition to failing to present evidence of a threat, the defendants failed to present evidence showing they had no reasonable alternative to seizing and holding the prison employees. To the contrary, the evidence showed they had access to the state and federal courts and had previously availed themselves of the prison grievance system with favorable results. *Id*.

[¶27] In the present case, the district court concluded Mr. James had several opportunities to avoid involvement in the Laramie robbery.

> He could have gone to the police. He could have told his mother about it. He could have simply refused and walked away.
> …
> [T]here was plenty of reasonable legal alternatives to violating the law. He had every opportunity to refuse to do so. And he had every opportunity to avoid the harm that was allegedly threatened a week earlier.

[¶28] We do not agree that a reasonable alternative on the night of the Laramie robbery was to walk away. Again, Mr. James was not armed and Mr. Lewis was armed with a

gun and had threatened harm previously if Mr. James did not do as he said. Viewing this evidence in a light favorable to Mr. James and taking it as entirely true, we conclude that a jury reasonably could have believed that when Mr. Lewis and Mr. James arrived in Laramie on the night of the robbery Mr. James had no reasonable alternative but to accompany Mr. Lewis into the motel where he committed the robbery.

[¶29] In the week leading up to the Laramie robbery, Mr. James was not in Mr. Lewis' presence for significant periods of time. He testified that he spent some nights with his girlfriend rather than at his own home with Mr. Lewis and his mother. The district court concluded that if he had gone to the police during that time, he could have avoided involvement in the Laramie robbery. Mr. James testified that he did not go to the police because he did not know if he was being watched by Mr. Lewis and his friends and because he had gone to police for help before to no avail.

[¶30] An overwhelming majority of courts have held that, as a matter of law, a defendant who has the opportunity to avoid committing a crime, either by contacting police or otherwise removing himself from a threatening situation, cannot seek to excuse his criminal conduct by claiming to have acted under duress. 2 Robinson, *Criminal Law Defenses* § 177, 2014 Supp., 162. *See also* 2 Lafave, *Substantive Criminal Law*, 2d Ed., § 9.7(b), 78 (A defendant may lose his defense of duress if he does not take advantage of a reasonable opportunity to escape, where that can be done without exposing himself unduly to death or serious bodily injury); 1 A.L.R. 4th 481 Criminal Law – Defense – Coercion § 2(a) 465 (2013) (Duress cannot be invoked as a defense by one who has a reasonable opportunity to avoid doing the act without exposure to death or serious bodily harm). *See also* 40 A.L.R.2d 908 (2014) Coercion, compulsion, or duress as a defense to criminal prosecution and cases cited therein. Thus, in *U.S. v. Alicea*, 837 F.2d 103 (2d Cir. 1988), the court held the duress defense was properly stricken where the defendants, who claimed they had been kidnapped at gun point, raped or threatened with rape and forced to act as drug couriers, did not take steps to extricate themselves from the situation when they were separated from their captors. Similarly, in *People v. Speer*, 255 P.3d 1115 (Colo. 2011), the court concluded the duress defense was not available where the defendant was at various times completely out of the presence of the person who had threatened him. Finally, in *U.S. v. Castro-Gomez*, 360 F.3d 216 (1st Cir. 2004) the court held the defendant did not have a duress defense where two days after being coerced to participate in an attempted drug importation, he met his coercers at the same place as before and was again coerced into participating in illegal activity. The court stated that a reasonable person would have foreseen the likelihood that the invitation to meet the coercers pertained to drug transportation, would not have gone to the meeting and would have summoned law enforcement.

[¶31] Applying the rationale from these other jurisdictions, it could be concluded that a reasonable person in Mr. James' position would either have gone to the police or taken other steps to extricate himself from Mr. Lewis after being threatened at gunpoint. Mr.

James' explanation as to why he did not go to the police or take other action between the first and second robberies may be insufficient to show that he had no opportunity to avoid the Laramie robbery. On the other hand, Mr. James had no way of knowing that rather than going to get alcohol, Mr. Lewis would drive to Laramie and rob a motel. The issue of whether the evidence presented a jury question is a close call; however, we are persuaded it was sufficient to support giving the theory of defense instruction and allowing the jury to determine whether Mr. James had a reasonable opportunity to avoid the crime.

[¶32] Deleted.

[¶33] Deleted.

[¶34] It is worth mentioning for purposes of future cases involving a duress defense that the federal courts have adopted a pre-trial procedure for cases involving a duress defense.

> When a defendant has indicated that he will seek to present a duress defense to the jury and the government seeks to preclude such evidence as legally insufficient, "it is appropriate for [the] court to hold a pretrial evidentiary hearing to determine whether [the] defense fails as a matter of law." *United States v. Paul,* 110 F.3d 869, 871 (2d Cir. 1997). The burden at such a hearing is on the defendant to present some evidence on each of the elements of the defense. *See*, *e.g.*, *United States v. Jaswal,* 47 F.3d 539, 544 (2d Cir. 1995) (per curiam). If the court finds that the defendant's evidence is insufficient as a matter of law to establish an element of the duress defense, the court may preclude the defendant from presenting evidence of that defense to the jury. *See*, *e.g.*, *United States v. Bailey,* 444 U.S. 394, 416, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980*)*; *United States v. Villegas,* 899 F.2d at 1343.

*U.S. v. Lizalde*, 38 Fed. Appx. 657, 659-660 (2nd Cir. 2002). *See also U.S. v. Bakhtiarii*, 913 F.2d 1053, 1075 (2nd Cir. 1990). Had this or a similar procedure been utilized before trial in the present case, the defense would have known before trial that the district court would not give the duress defense instruction and would not have relied on it as its sole defense at trial. Mr. James and defense counsel then could have considered the other options available to them. Resolving the matter in this way would have avoided the jury confusion that obviously occurred as reflected by the jury question.

[¶35] In light of the remand, we also take this opportunity to adopt the duress defense elements both the State and Mr. James have urged us to apply in resolving this appeal. In

11

*Dixon v. United State*, 548 U.S. 1, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006), the issue before the Court was whether the defendant had the burden to prove her duress defense by a preponderance of the evidence or the State had the burden to prove beyond a reasonable doubt that she did not act under duress. The Court held the burden was on the defendant to prove the defense by a preponderance of the evidence. In reaching that result, the Court said:

> There is no federal statute defining the elements of the duress defense. We have not specified the elements of the defense, see, e.g., *United States v. Bailey*, 444 U.S. 394, 409-410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), and need not do so today. Instead, we presume the accuracy of the District Court's description of these elements: (1) The defendant was under an unlawful and imminent threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) the defendant had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to perform the criminal conduct; (3) the defendant had no reasonable, legal alternative to violating the law, that is, a chance to refuse to perform the criminal act and also to avoid the threatened harm; and (4) that a direct causal relationship may be reasonably anticipated between the criminal act and the avoidance of the threatened harm. … [S]ee generally *United States v. Harper*, 802 F.2d 115, 118 (C.A.5 1986).

*Dixon*, 548 U.S. at 5, n.2, 126 S. Ct. at 2437, 165 L.Ed. 2d at 307. These elements apply on remand and in all future cases involving a duress defense.

[¶36] Reversed and remanded for a new trial.