# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 15

OCTOBER TERM, A.D. 2016

February 16, 2017

CASSANDRA L. McEUEN,

Appellant
(Defendant),

v.

S-16-0135

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and Eric M. Alden, Senior Assistant Appellate Counsel.  Argument by Mr. Alden.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; and John A. Brodie, Assistant Attorney General.  Argument by Mr. Brodie.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    After a two-day trial, a jury convicted Cassandra McEuen of one count of felony interference with a peace officer and of operating an ATV without liability insurance or valid registration.  On appeal, Ms. McEuen only challenges her felony interference conviction.  She claims the district court erred in denying her motion for judgment of acquittal because the evidence at trial demonstrated the arresting officer was not engaged in the lawful performance of his official duties.  She also argues that the court erred in failing to give the jury her proffered self-defense instructions, and that the court should have provided the jury with definitions of phrases contained in the felony interference charge.  We will affirm.

## ISSUES

[¶2]    Ms. McEuen states the issues on appeal as follows:

> I.    The evidence demonstrates that the officer was not in the lawful performance of his official duties.
> II.    The evidence was insufficient to prove intent to cause injury.
> III.    The court erred in denying Ms. McEuen's requested self-defense instruction and failing to instruct on the requirements of lawful performance of duties and on the definition of attempt.

## FACTS

[¶3]    On August 21, 2015, on-duty Officer Josh Buhmann noticed an ATV driving on an Evanston street without a license plate.  Officer Buhmann activated his overhead lights and activated his air horn, but the driver of the ATV, Cassandra McEuen, did not stop and drove the ATV into an alleyway and eventually an apartment complex parking lot.  Ms. McEuen began walking toward the apartment complex, but turned around after Officer Buhmann activated his air horn one more time.

[¶4]    After initiating contact, Officer Buhmann requested Ms. McEuen's driver's license and informed her it was illegal to drive her ATV on a public street with no registration.  Ms. McEuen explained she tried to register the ATV but the courthouse was closed.  Officer Buhmann requested Ms. McEuen's driver's license a second time, which she thought she had "put in her jeans," but was not on her person.  The officer asked for Ms. McEuen's name a fourth time, and she responded, "Goddamit" and began to walk away from the officer.  Officer Buhmann followed and asked her where she was going, but Ms. McEuen did not respond and kept walking.

[¶5]   Officer Buhmann caught up to Ms. McEuen, and as he did so, he grabbed her left forearm and asked what she was doing.  She turned to him and said, "What are you doing?" and kicked him in the right leg.  Officer Buhmann testified:

> It appeared to me at the time that she was trying to get away from the stop and get into the building and I wanted to stop her to make sure that, you know, she didn't have a warrant or something to – I mean, she wouldn't give me her name or any of that information, so I wasn't sure what exactly she was doing.

[¶6]   Ms. McEuen told Officer Buhmann that she was going to get her license.  She demanded he let go of her, and he responded that she could not just walk away.  In response, she began kicking him again.  At this point, Officer Buhmann grabbed Ms. McEuen by both arms and turned her face-first against the building.  This did not deter Ms. McEuen from kicking the officer, as she continued to do so backward, using her heel.

[¶7]   After some time, Ms. McEuen calmed down and Officer Buhmann began escorting her toward his patrol car.  Ms. McEuen started to struggle once again, and attempted to free herself from his grasp.  Officer Buhmann then pinned Ms. McEuen to the ground, placed his right knee on her legs, and brought her hands behind her back.  Ms. McEuen told Officer Buhmann she would not comply with him as other officers arrived and helped Officer Buhmann put Ms. McEuen into formal custody.

[¶8]   A jury convicted Ms. McEuen of felony interference with a peace officer and operating a vehicle without liability insurance or valid registration.  This appeal followed.

## DISCUSSION

### I.   Sufficiency of the Evidence

[¶9]   Ms. McEuen presents her first issue as a failure by the district court to grant her motion for judgment of acquittal.  The State argues that she has waived her right to challenge the district court's denial of his motion for judgment of acquittal when she presented evidence after making the motion and then did not renew her motion at any point.  We agree with the State.

[¶10]  At the end of the State's case, Ms. McEuen moved for a judgment of acquittal, on which the court reserved its ruling.  Ms. McEuen then presented evidence to the jury in the form of her own direct testimony.  We have previously held that a defendant's introduction of evidence following denial of a judgment of acquittal is a waiver of the appeal of that motion. *Bruce v. State*, 2015 WY 46, ¶ 55, 346 P.3d 909, 926 (Wyo.

2

2015); *see also Hawes v. State*, 2014 WY 127, ¶ 8, 335 P.3d 1073, 1076 (Wyo. 2014). Here, although the court did not immediately rule on Ms. McEuen's motion, her motion was de facto denied after she did not renew her motion, and within ten days of the jury being discharged. *See* W.R.Cr.P. 29(c). Given the de facto denial, and without a renewal of the motion, we therefore review only the sufficiency of the evidence.

> We review that evidence with the assumption that the evidence of the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. We will not reweigh the evidence nor will we re-examine the credibility of the witnesses.

*Hawes*, ¶ 8, 335 P.3d at 1076 (citations omitted).

*Lawful Performance*

[¶11]  To begin our review, we consider Ms. McEuen's argument that the State presented insufficient evidence that Officer Buhmann was engaged in the lawful performance of his duties. Specifically, she argues that Officer Buhmann's action in reaching out and grabbing her arm, and then pinning her to the wall of the nearby apartment building, and to the ground thereafter, equaled excessive force, thereby negating her conviction of felony interference.

[¶12]  Felony interference with a peace officer is statutorily defined as follows:

> (b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer ***engaged in the lawful performance of his official duties*** is guilty of a felony punishable by imprisonment for not more than ten (10) years.

Wyo. Stat. Ann. § 6-5-204 (LexisNexis 2015) (emphasis added).  When a peace officer uses excessive force, he is not considered to be engaged in the lawful performance of his official duties, and the law permits a person to use the force he or she reasonably believes is necessary to protect against that use of excessive force. *Yetter v. State*, 987 P.2d 666, 669 (Wyo. 1999).

[¶13]  Our review of the record as a whole shows that Officer Buhmann was lawfully performing his official duties and did not use excessive force during his interaction with Ms. McEuen.  Ms. McEuen did take a long time to acknowledge the traffic stop.  She was evasive and unresponsive throughout the entire traffic stop.  After Officer Buhmann

engaged his overhead lights and air horn, Ms. McEuen did not respond until she reached her apartment complex. Even then, Ms. McEuen was shifty in her responses and actions, refusing to provide identification or verbally state her name. Ms. McEuen's evasiveness and nervous behavior, coupled with the act of her walking away from the officer amid their interaction, explains the officer reaching for Ms. McEuen's arm to prevent her from walking into an apartment building during a traffic stop. ("[I]n justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *see Clay v. State*, 2016 WY 55, ¶ 16, 372 P.3d 195, 198 (Wyo. 2016).

*Bodily injury*

[¶14] In furtherance of her insufficiency of the evidence claim, Ms. McEuen argues that the State failed to prove that she had specific intent to injure officer Buhmann. However, under our standard of review, in looking at the evidence, her intent to injure Officer Buhmann is clear.

[¶15] We explained in *Leavitt v. State,* 2011 WY 11, 245 P.3d 831 (Wyo. 2011):

> … although the law presumes an individual to generally intend the natural consequences of his actions, it will not presume that he specifically intended any particular consequence. That is, a mere showing that certain conduct occurred which produced a particular result is legally sufficient to establish the actor's general intent. Thus, we explained that the bare fact of assaultive behavior will not give rise to a presumption that an assailant had the specific intent to cause any particular harm. ... We also noted, however, that such specific intent may be properly proven by reasonable inferences from the character of such acts and their surrounding circumstances. In particular, the specifics of a defendant's conduct and other circumstantial evidence may permit the jury to infer that he acted with the specific intent to cause bodily injury. [Citations omitted; emphasis in original.]

> The State may prove specific intent by the permissible means of inference from circumstantial evidence. *Garcia,* 777 P.2d at 1096.

*Leavitt*, ¶ 10-11, 245 P.3d at 833.

[¶16] In her attempts to escape Officer Buhmann's grasp, Ms. McEuen repeatedly kicked him in his leg. Even after Officer Buhmann placed Ms. McEuen against the building, she continued kicking backwards into the officer's leg with her heel.

[¶17] Brooke Murray, a witness to the interaction between Officer Buhmann and Ms. McEuen, testified at trial. Her testimony bolsters the conclusion that Ms. McEuen was trying to injure the officer. She described Ms. McEuen's actions as "combative," and observed her "screaming and trying to kick [Officer Buhmann]." Even after she briefly calmed down enough for Officer Buhmann to begin escorting her back to his patrol car, she attempted to break free and kick him again. Though Officer Buhmann placed her on the ground at this point, she continued to struggle and even said she would not comply with his request.

[¶18] Viewing only the State's evidence, and in the light most favorable to the State, we find that a jury could reasonably infer from this evidence the existence of specific intent beyond a reasonable doubt that Ms. McEuen intended to cause bodily injury.

## II. **Jury Instructions**

[¶19] Ms. McEuen argues that the court violated her right to present her theory of the case by refusing to give her proffered self-defense instruction. The State responds that the court did not err because Ms. McEuen's theory of the case was not self-defense, and the proffered instructions were improper statements of law.

[¶20] The self-defense instructions, which were proposed instructions A and B, read as follows:

### INSTRUCTION NO. A

> If you find that the State of Wyoming failed to prove beyond a reasonable doubt that the officer was acting in the lawful performance of his official duties, then you are instructed that it is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

**INSTRUCTION NO. B**

> If you find that the State of Wyoming failed to prove beyond a reasonable doubt that the officer was acting in the lawful performance of his official duties, then you are instructed that a person who has reasonable grounds to believe, and actually does believe that he is threatened with an attack that justifies the exercise of the right of self-defense, need not retreat or consider whether he can safely retreat, so long as he does not use deadly force. He is entitled to stand his ground and use such force as is reasonably necessary under the circumstances to secure himself from the attack. This law applies even though the assailed person might have been able to gain safety by flight or by withdrawal from the scene.

[¶21] The district court refused Ms. McEuen's theory of defense instructions on the grounds that "there was no testimony [at trial] that any action that was exercised was in self-defense or anything along those lines."

[¶22] The failure to give an offered instruction on the law related to a theory of defense is a due process issue, which this Court reviews *de novo. James v. State*, 2015 WY 83, ¶ 17, 357 P.3d 101, 105 (Wyo. 2015) (citing *Nelson v. State*, 2010 WY 159, ¶ 13, 245 P.3d 282, 285 (Wyo. 2010)).

[¶23] A defendant has a due process right to a jury instruction that details the defendant's theory of the case. *James*, ¶ 18, 357 P.3d at 105 (quoting *Nelson*, ¶ 14, 245 P.3d 282 at 285-86). However, "[n]ot every instruction must be given simply because there is a claim that it incorporates a theory of the case." *Wilkening v. State*, 922 P.2d 1381, 1383 (Wyo.1996) (citing *Cundy v. State*, 897 P.2d 149 (Wyo. 1995)).

> A trial court may properly refuse to give a proposed instruction if it is erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events. *Madrid v. State*, 910 P.2d 1340, 1346 (Wyo.1996); *Jansen v. State*, 892 P.2d 1131, 1140 (Wyo.1995); *Virgilio v. State*, 834 P.2d 1125, 1128 (Wyo.1992).

*Iseli v. State*, 2007 WY 102, ¶ 10, 160 P.3d 1133, 1136 (Wyo. 2007) (quoting *Farmer v. State*, 2005 WY 162, ¶ 23, 124 P.3d 699, 707 (Wyo. 2005)).

6

[¶24]  As we very recently discussed in *Tingey v. State*, 2017 WY 5, ¶ 33___ P.3d ___ (Wyo. 2017), there is a right of self-defense against a police officer only if that officer is using excessive force.  The same instruction offered in *Tingey* is the same instruction offered here, which is frankly wrong because it is, for the most part, the standard for a citizen on citizen encounter.  We said in *Tingey:*

> The variation offered by Mr. Tingey was essentially an instruction that a defendant is allowed to use self defense, meaning force, against a peace officer if that officer unlawfully enters the defendant's home. That is not the law. We have said:

>> When an individual is confronted by a uniformed police officer attempting to effect an arrest [or secure a premises], any act of self-defense also amounts to resisting arrest [or interference]. In such a situation, a claim of self-defense is circumscribed by what we said in *Roberts v. State*, Wyo., 711 P.2d 1131, 1135 (1985):

>>> "There may be situations in which police activity is so provocative and resistance so understandable that it can only be concluded that the police were not engaged in the lawful performance of their official duties."

>> If that situation is present, the law permits a person to use such force as he reasonably believes necessary to protect himself against ***excessive force*** by the officer which might be considered a separate assault. *State v. Holley*, Fla., 480 So.2d 94 (1985); *State v. Thomas*, Mo., 625 S.W.2d 115 (1981); *State v. Castle*, 48 Or.App. 15, 616 P.2d 510 (1980); *State v. Eckman*, 9 Wash.App. 905, 515 P.2d 837 (1973); Annot., 77 A.L.R.3d, § 2 at 284–286.

> *Best v. State*, 736 P.2d 739, 745 (Wyo. 1987) (emphasis added).

*Tingey*, ¶ 33, ____ P.3d. at _____.  The precondition the law imposes for a claim of self-defense against a peace officer is not merely a finding of unlawful performance but a finding that the officer used excessive force.  *Id.,* ¶ 36, ___ P.3d. ___.  Here, Ms.

7

McEuen's instruction was a misstatement of the law. Thus, the district court therefore did not err in refusing the proffered instruction.

### III. Special Definition Instructions Offered by Defense

[¶25] Finally, we address Ms. McEuen's argument that the district court should have provided jury instructions as to the definitions of "lawful performance" and "attempt," and in not doing so, committed error.

[¶26] Because Ms. McEuen did not request such an instruction, or instructions, during trial, nor did she object at any time to the omission of the definitions, we review for plain error. To establish plain error, an appellant "must establish by reference to the record that a clear and obvious violation of a clear and unequivocal rule of law adversely affected a substantial right to such a degree that [the appellant] was materially prejudiced." *Vaught v. State*, 2016 WY 7, ¶ 14, 366 P.3d 512, 516 (Wyo. 2016); *see also Butler v. State*, 2015 WY 119, ¶ 16, 358 P.3d 1259, 1264 (Wyo. 2015).

[¶27] Ms. McEuen has not identified any obvious transgression of any clear and unequivocal rule of law. While she does attempt to argue that the interference instruction was deficient because there were no accompanying instructions as to the definitions of "lawful performance" and "attempt," and that this violated the rule of law that the jury must be instructed on the necessary elements of the crime charged, her argument ultimately fails. We have previously held that where a term used in a criminal statute is not given a statutory definition, we conclude that the legislature did not mean for the term to have a specialized meaning. *Masias v. State*, 2010 WY 81, ¶ 25, 233 P.3d 944, 951 (Wyo. 2010); *Ewing v. State*, 2007 WY 78, ¶ 10, 157 P.3d 943, 946 (Wyo. 2007).

> Words in jury instructions "are to be given their plain and ordinary meaning unless otherwise indicated." *Keene v. State*, 812 P.2d 147, 150 (Wyo. 1991). When terms in a jury instruction are to be given their plain and ordinary meaning, there is no need to supply a definition.

*Counts v. State,* 2012 WY 70, ¶ 46, 277 P.3d 94, 108 (Wyo. 2012).

[¶28] We reject Ms. McEuen's argument that the words at issue – "attempt" and "lawful performance" had to be defined for the jury. The legislature has provided no indication that these require any special definition Ms. McEuen has failed to show that a clear and unequivocal rule of law has been violated.

8

## CONCLUSION

[¶29]  There was substantial evidence to convict Ms. McEuen of the crimes charged and the district court did not err in instructing the jury.  Affirmed.