# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 32

OCTOBER TERM, A.D. 2019

March 4, 2020

CHRISTIAN J. GARZA,

Petitioner,

v.

S-19-0108

THE STATE OF WYOMING,

Respondent.

*Original Proceeding*
*Petition for Writ of Review*
*District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Petitioner:*
   Alex F. Freeburg, Freeburg Law LLC, Jackson, Wyoming

*Representing Respondent:*
   Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General. Argument by Mr. Zintak.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Chief Justice.

[¶1]    A jury found Christian Garza guilty of misdemeanor interference with a peace officer after he verbally refused to provide a blood sample pursuant to a search warrant. After the district court affirmed his conviction, Mr. Garza filed a petition for writ of review in this Court.  We granted the petition and now affirm.

## ISSUES

[¶2]    Mr. Garza presents two issues, which we restate as:

> 1.  Was the jury presented with sufficient evidence to find Mr. Garza guilty of misdemeanor interference with a peace officer?
>
> 2.  Did the circuit court err in rejecting Mr. Garza's proposed jury instruction concerning the type of verbal conduct that may constitute interference with a peace officer?

## FACTS

[¶3]    In the early morning hours of December 3, 2017, Deputy Bradley Goering of the Teton County Sheriff's Office was patrolling Highway 22 in Teton County and stopped a vehicle driven by Christian Garza.  After talking to and observing Mr. Garza, Deputy Goering arrested him on suspicion of driving under the influence of alcohol and read him Wyoming's implied consent advisement.  Mr. Garza said he wanted an attorney and refused consent to any type of testing.  Deputy Goering then transported him to the county jail and applied for a search warrant.

[¶4]    After obtaining the search warrant, Deputy Goering presented it to Mr. Garza.  He explained that the warrant was signed by a judge, that it authorized him to take Mr. Garza to the hospital to have his blood drawn, and that at that point it was no longer consensual. Mr. Garza asked to have his attorney there and to make a telephone call, and Deputy Goering advised him that he was not entitled to have an attorney present and that he could make his telephone call when they returned from the hospital.  Deputy Goering then advised Mr. Garza that if he refused or obstructed the blood draw in any way, he would be charged with interference.  He went on, "You're welcome to fight this in court, but you don't get to fight it now."

[¶5]    Deputy Goering transported Mr. Garza to the hospital and was met there by his backup officer, Officer Thomas Quinn of the Jackson Police Department.  Because Mr. Garza was under arrest, his hands and legs were restrained and remained so inside the hospital.  The two officers and Mr. Garza entered a small examination room, and Deputy Goering directed Mr. Garza to a chair.  While Deputy Goering completed paperwork, a

1

hospital worker prepared for the blood draw.  When the hospital worker approached Mr. Garza and asked him which arm he would like the blood drawn from, Mr. Garza stated, "I'm not allowing you to take any blood from me."  Deputy Goering then asked, "You're going to refuse to give any blood?" and Mr. Garza nodded.  Deputy Goering again advised him that the warrant was signed by a judge and that Mr. Garza would be charged with interference with a peace officer if he refused.  Mr. Garza maintained his position that he would not comply and wanted to speak to an attorney, and he added that he felt discriminated against and did not trust the officers or the hospital worker.

[¶6]    On March 16, 2018, the State filed an information charging Mr. Garza with misdemeanor interference with a peace officer, and on April 11, 2018, a one-day jury trial was held.  Deputy Goering and Officer Quinn testified, and their body camera recordings from the county jail and hospital were admitted into evidence, as was the search warrant. After the State rested, Mr. Garza moved for a judgment of acquittal, which the court denied. The case then went to the jury, and it returned a guilty verdict.  Mr. Garza renewed his motion for a judgment of acquittal, and the court again denied the motion.

[¶7]    On that same day, the circuit court issued its judgment and sentence.  It sentenced Mr. Garza to 365 days in county jail, with all but 75 days suspended, and imposed a $1,000 fine.  It also ordered that Mr. Garza serve three years of unsupervised probation.  Mr. Garza appealed to the district court, and that court affirmed.  He then petitioned this Court for a writ of review, which we granted.

## DISCUSSION

### A.    Sufficiency of the Evidence

[¶8]    In reviewing Mr. Garza's sufficiency of the evidence claim, we

> decide whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented. In doing so, we assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence. We will not reweigh the evidence or re-examine witness credibility. Because direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone.

*Bittleston v. State*, 2019 WY 64, ¶ 17, 442 P.3d 1287, 1292 (Wyo. 2019) (quoting *Jones v. State*, 2019 WY 45, ¶ 28, 439 P.3d 753, 762 (Wyo. 2019)).

2

[¶9]   Mr. Garza does not dispute the facts in this case, but instead contends that his respectful refusal to comply with a search warrant is not the type of verbal conduct that can constitute interference with a peace officer.  In support, he points to our decision in *Matthews v. State*, 2014 WY 54, 322 P.3d 1279 (Wyo. 2014).  In *Matthews*, the defendant entered a conditional guilty plea by which he preserved three issues for review, including the question of whether his refusal to comply with a search warrant after being arrested for driving under the influence could constitute interference with a peace officer.  *Matthews*, ¶ 16, 322 P.3d at 1281.  The trial court had not decided this issue, holding that in Mr. Matthews' case there were issues of fact to be determined at trial.  *Id.*  We held that the issue was not properly the subject of a conditional plea because "the interference charge could not be ruled upon without development of the underlying facts at trial."  *Id.* ¶ 17, 322 P.3d at 1281.  In so holding, we added in a footnote:

> Based on the record before us, it does not appear that the officer's request for Mr. Matthews to comply with the warrant, and Mr. Matthews' negative response, is sufficient to constitute interference; however, this determination will have to await a full development of the record at trial.

*Matthews*, ¶ 17 n.2, 322 P.3d at 1282 n.2.

[¶10]  Mr. Garza seizes on the first clause of our footnote in *Matthews* as controlling and contends that his case is no different.  His reliance is misplaced.  First, the footnote in *Matthews* is dicta, and thus should not be relied upon as substantive authority.  *In re Claim of Prasad*, 11 P.3d 344, 348 (Wyo. 2000) (citing *Bales v. Brome*, 53 Wyo. 370, 380, 84 P.2d 714, 717 (1938)); *Jordin v. State*, 2018 WY 64, ¶ 15, 419 P.3d 527, 532 (Wyo. 2018).  Furthermore, in *Matthews*, we did not suggest that a defendant's refusal to comply with a search warrant could not constitute interference as a matter of law. Instead, we recognized that interference is a fact sensitive question that must be decided by a trier of fact.  *See Brown v. State*, 2005 WY 37, ¶ 21, 109 P.3d 52, 58 (Wyo. 2005) ("The criminality of Brown's behavior toward Officer Hood was for the trier of fact to decide."); *Newton v. State*, 698 P.2d 1149, 1151 (Wyo. 1985) (whether speech resulted in obstruction, interference or impediment is a question of fact); *Tillett v. State*, 637 P.2d 261, 265 (Wyo. 1981) (finding interference under the facts).

[¶11]  We turn then to the question of whether the jury could have rationally found Mr. Garza guilty of interference on the facts before it.  Misdemeanor interference is statutorily defined as follows:

> A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly

3

obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties.

Wyo. Stat. Ann. § 6-5-204(a) (LexisNexis 2019).

[¶12]  We have said that "'to interfere' is defined as to check or hamper the action of the officers or to do something which hinders or prevents or tends to prevent the performance of his legal duties." *Tillett*, 637 P.2d at 265 n.2 (approving jury instruction).  Interference does not require the "use of actual, direct or threatened force." *Id.* at 264 (citing Torcia, Wharton's Criminal Law, 14th Edition, § 592, p. 305 (1981)).  "[A] peace officer may be obstructed, interfered with or impeded in the lawful performance of his official duties in violation of § 6-5-204(a) by speech, passive or otherwise . . . ." *Newton*, 698 P.2d at 1151. We have also observed:

> Each of the three words, "obstructs," "impedes" and "interferes," is a word of common usage and accepted meaning by those of ordinary intelligence. Dictionary synonyms include such words as "hinder," "intermeddle," "deter," "hamper," "prevent," "delay," "thwart" and "inhibit." All of these are words of recognized meaning by those of ordinary intelligence.
>
> > " * * * [T]he statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties. * * * " *Hudson v. State*, 135 Ga.App. 739, 218 S.E.2d 905, 907 (1975).
>
> The legislative intent to prohibit that which would interfere with law enforcement officers as they go about their duties is manifest.

*Newton*, 698 P.2d at 1152.

[¶13]  We have little difficulty in finding the evidence sufficient to sustain the jury's verdict in this case.  It is undisputed that Deputy Goering was engaged in the lawful performance of his duties as a peace officer, and the search warrant, which was admitted into evidence, confirmed that with its final paragraph:

> **YOU ARE HEREBY AUTHORIZED AND ORDERED**, in the name of the State of Wyoming, pursuant to W.S. 31-6-102(d), to obtain and remove the above-named Defendant's **Blood, Breath or Urine**, at the choice of the law enforcement

4

agency executing this Warrant, to be executed immediately, at any time during the day or night pursuant to **W.R.Cr.P. 41(c)**, as the evidence requested is of a perishable nature, and prepare a written inventory of the property seized and return the Warrant and written inventory before me within ten (10) days of this date. If the Defendant refuses to comply with, or interferes with, the execution and return of this Warrant, he/she may be subject to criminal penalty.

[¶14] The evidence was also sufficient to establish that Mr. Garza prevented Deputy Goering from performing his lawful duty under the search warrant. The State introduced videos from the body cameras of Deputy Goering and Officer Quinn. Those videos showed that Deputy Goering provided Mr. Garza a copy of the search warrant and explained in clear terms that it was signed by a judge, that it authorized Deputy Goering to obtain a blood sample, and that it mandated Mr. Garza's compliance. He also advised Mr. Garza that if he refused or obstructed the warrant in any way, he would be charged with interference. This evidence was sufficient to show that Mr. Garza was fully informed that a judge had authorized and directed Deputy Goering to obtain a blood sample from him. Nonetheless, when the time came to perform the draw, Mr. Garza stated, "I'm not allowing you to take any blood from me."

[¶15] Mr. Garza's unambiguous statement made it clear that he would not allow the drawing of his blood as ordered by the warrant. Moreover, Deputy Goering confirmed that that was Mr. Garza's position when he asked him if he was refusing to give any blood, and Mr. Garza again made that clear. The result, of course, was that Deputy Goering returned Mr. Garza to the county jail without having obtained the blood sample ordered by the warrant. As we said above, interference does not require physical force or resistance. Mr. Garza's verbal refusal under these circumstances interfered with Deputy Goering's execution of the search warrant and thus was sufficient to constitute interference with a peace officer.

## B.     Jury Instruction

[¶16] Mr. Garza next contends that the circuit court erred in refusing to give his proposed jury instruction that a mere remonstrance or criticism of an officer is not sufficient to constitute interference. In particular, he requested that the jury be instructed with the following direct quote from *Tillett*, 637 P.2d at 264:

> "Although force or threatened force is not always an indispensable ingredient of the offense of interfering with an officer in the discharge of his duties, mere remonstrances or even criticisms of an officer are not usually held to be the

5

equivalent of unlawful interference. * * * " 339 U.S. at 6, 70 S.Ct. at 470.

It has also been said that, while mere remonstrances are not enough, verbal abuse alone may become sufficient to constitute the crime where its intensity, or the totality of several acts is such as to amount to an interference with an officer in the performance of his duty. *Pope v. State*, Tenn. Cr. App., 528 S.W.2d 54 (1978); *State v. Tages*, 10 Ariz.App. 127, 457 P.2d 289 (1969); Annot., 44 A.L.R.3d 1018.

[¶17]   In arguing for this instruction before the circuit court, Mr. Garza characterized it as a theory of defense instruction, and he maintains the same on appeal. Based on that characterization, he argues for a de novo review of the circuit court's failure to give it. *See Tingey v. State*, 2017 WY 5, ¶ 27, 387 P.3d 1170, 1178 (Wyo. 2017) ("The failure to give an offered instruction on the law related to a theory of defense is a due process issue, which this Court reviews de novo.") (citing *James v. State*, 2015 WY 83, ¶ 17, 357 P.3d 101, 105 (Wyo. 2015)). The State disagrees that the requested instruction was a theory of defense instruction and argues for an abuse of discretion review. *See Sam v. State*, 2017 WY 98, ¶ 57, 401 P.3d 834, 854 (Wyo. 2017) (court's refusal to give proposed instruction for abuse of discretion) (citing *Knospler v. State*, 2016 WY 1, ¶ 22, 366 P.3d 479, 485 (Wyo. 2016)). We need not decide whether the proposed instruction was truly a theory of defense instruction because even under the more stringent de novo review required for the refusal of such an instruction, we find no error.

[¶18]   Concerning theory of defense instructions, we have said:

Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case. *Blakely v. State*, 474 P.2d 127, 129 (Wyo. 1970). The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. *Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo. 1992). A theory of the case is more than a comment on the evidence that tells the jury how to consider the evidence. *Ellifritz v. State*, 704 P.2d 1300 (Wyo. 1985). Fundamentally, the instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp*, 833 P.2d at 490.

. . . .

6

> Any competent evidence is sufficient to establish a defense theory even if it consists only of testimony of the defendant. *Best v. State*, 736 P.2d 739, 745 (Wyo. 1987). We view the evidence in a light favorable to the accused and the accused's testimony must be taken as entirely true to determine if the evidence is competent. *Duckett v. State*, 966 P.2d 941, 944 (Wyo. 1998). Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Id.*

*James*, ¶ 18, 357 P.3d at 105-06 (quoting *Nelson v. State*, 2010 WY 159, ¶ 14, 245 P.3d 282, 285-86 (Wyo. 2010)).

[¶19]   In denying Mr. Garza's proposed instruction, the circuit court explained:

> All right.  I'm not going to give the instruction because I think this situation is fundamentally different.  The disagreements that people have with police on the street to which leads to an arrest.  This is not – it's not a traffic stop resulting in an interference charge, it's a traffic stop resulting in a DUI arrest, resulting in Mr. Garza refusing implied consent, which he has every right to do, and then the issuance of a search warrant and the demand that he comply with a search warrant.
>
> And, you know, there aren't that many cases – I'm not sure there are any cases that talk about this in this kind of a context.  Let's see.
>
> I mean the only case I was able to find was a case that said that no physical force – no physical resistance is necessary.  And so I view this situation as fundamentally different with the situations that sometimes call for that kind of a jury instruction about disagreeing with the police.

[¶20]   We agree.  When the moment arrived for the blood to be drawn, Mr. Garza said "I'm not allowing you to take any blood from me." His statement was not a remonstrance or criticism of the officers.  It was an unambiguous statement that he would resist efforts to take his blood, and that was the basis on which he was charged with interference with a peace officer.

[¶21]   This case thus differs from *Tillett*, where this Court approved an instruction similar to Mr. Garza's proposed instruction.  *Tillett*, 637 P.2d at 265 n.2.  In *Tillett*, the following occurred:

> On January 22, 1980, Wyoming Highway Patrol Officers Wollack and Clavette stopped appellant's car for speeding on Wyoming State Highway 37. The record reflects that both automobiles were parked very close to the outer edge of the traveled pavement.
>
> After the cars had been stopped, appellant Will Tillett left his vehicle and approached the patrol car. Officer Clavette had also exited his car. Tillett was asked by the officer to display his driver's license, but he refused to do so when he learned that the officer intended to cite him for speeding. When this request was made, appellant's driver's license was in his hand. At this juncture, appellant demanded that the radar gun be locked in and the patrol car impounded because these were items of evidence in the case. While making these demands in an angry tone, Mr. Tillett also hopped onto the hood of the patrol car. Officer Clavette once again asked appellant for his driver's license, and he again refused to surrender it, asserting that both officers were communistic and were behaving like the Gestapo. Finally, upon being informed by Officer Clavette that he would be arrested if he did not produce the license, Mr. Tillett complied. The officer then returned to the patrol car for the purpose of issuing the citation.
>
> Officer Wollack had also exited the patrol car because of Tillett's obstreperous conduct and because he was worried about his partner's safety. Thereupon the appellant also expressed his opinions to Officer Wollack, who then asked Mr. Tillett to return to his car for his own safety as well as that of the officers and the traveling public.
>
> Rather than comply with the officer's request, appellant raised his voice even louder and continued describing the officers as communistic and Gestapo-like. He also made threatening gestures at Officer Wollack. On at least two separate occasions, Officer Wollack asked appellant to return to his car, but appellant would not comply. Not until Wollack informed Tillett that he was under arrest, did he finally offer to return to his car. At this point, the officer informed Tillett that

8

it was too late, and he undertook to handcuff appellant. A struggle ensued, whereupon Officer Clavette once again exited the vehicle in order to assist Officer Wollack and the appellant was thereupon taken into custody. He was then transported to the sheriff's office, where he was issued a citation for speeding and charged with interfering with a police officer.

*Tillett*, 637 P.2d at 263.

[¶22]   Unlike in *Tillett*, the record contains no evidence that remonstrance or criticism of the officers played a part in Mr. Garza's interference charge.[1]   The proposed instruction was therefore properly denied.   *See James*, ¶ 18, 357 P.3d at 106 (theory of defense instruction not based on the evidence may be properly refused) (quoting *Nelson*, ¶ 14, 245 P.3d at 285-86).[2]

[¶23]   Affirmed.

---

[1] While Mr. Garza made statements that he felt he was being discriminated against and did not trust the officers, the record contains no evidence that he was charged with interference in response to those statements.

[2] Although the proposed instruction is a correct statement of the law and was approved at least in part in *Tillett*, we question whether the instruction, as written, would be helpful to a jury. If the proper case presents itself for such an instruction, we suggest simplifying the language. For example: Interference does not require physical resistance or force, but it requires more than mere disagreement with or criticism of a peace officer.